**Kent CARVELL and Jane Gay Carvell, Plaintiffs–Appellees,**

v.

**Thomas M. BOTTOMS and Paul Plant, Defendants–Appellants.**

Supreme Court of Tennessee, at Nashville.

May 30, 1995.

Phil C. Neal, Peter B. Newton, Bradley C. Twedt, Neal, Gerber & Eisenberg, Chicago, IL, William T. Ramsey, Neal & Harwell, Nashville, TN, for plaintiffs-appellees.

Douglas Fisher, Howell & Fisher, Larry D. Wilks and Gail Vaughn Ashworth, Amicus Curiae, Tennessee Bar Ass'n, Nashville, TN, for defendants-appellants.

## OPINION

DROWOTA, Justice.

In this legal malpractice case, defendants Thomas M. Bottoms and Paul Plant appeal from the Court of Appeals' reversal of the trial court's dismissal of the action. The issue for our determination is whether this action is barred by the statute of limitations applicable to legal malpractice actions, Tenn. Code Ann. § 28-3-104,[1] under the facts of this case. For the reasons stated hereinafter, we reverse the judgment of the Court of Appeals and dismiss the action.

### FACTS AND PROCEDURAL HISTORY

In October 1981 Ms. Roaby Baxter contracted with Kent and Jane Gay Carvell, the plaintiffs in this action, for the purchase of one of the Carvell's "spec homes." The property Ms. Baxter selected was subject to a gas pipeline easement owned by Texas Eastern Transmission Corporation (Texas Eastern). Texas Eastern's pipeline lay along the edge of the property and was marked by orange and white markers.

The Carvells employed Thomas M. Bottoms, a partner in the firm of Harwell, Bottoms and Plant, to prepare the closing documents. The first document drafted by Bottoms, a preliminary title opinion dated De-

---

**1.** Section 28-3-104 provides, in pertinent part: "The following actions shall be commenced within one (1) year after the cause of action accrued: ... (2) Actions and suits against attorneys ... for malpractice, whether the actions are grounded or based in contract or tort ..."

cember 10, 1981, stated that the property was subject to power line, gas line and existing roadway easements. The warranty deed prepared by Bottoms did not, however, specifically indicate the existence of the Texas Eastern easement. The closing occurred on December 11, 1981; and the property was conveyed via the warranty deed which did not mention the Texas Eastern easement.

In the summer of 1985, Texas Eastern moved its pipeline from the edge of Ms. Baxter's property to a location closer to her home. On February 18, 1986, Ms. Baxter brought an action against the Carvells, alleging that they had breached the warranty of good title because the deed did not disclose the Texas Eastern easement.

Soon after being served with the complaint, the Carvells informed Paul Plant, Bottoms's former partner,[2] that they had been sued for a "wrongly prepared deed"; and they asked him what should be done about it. Although Plant stated that he did not believe that Bottoms was negligent in failing to include the Texas Eastern easement on the deed, he also stated that "he couldn't represent [the Carvells] because if something happened that [the Carvells] would have a case against him, and that's why he had errors and omissions insurance."[3]

Soon thereafter the Carvells enlisted another attorney, Travis Gobble, to assist them in handling the lawsuit. Gobble performed some legal services in connection with the case (although he did not charge the Carvells for this work); Gobble also told the Carvells that he did not believe that Baxter's claim was meritorious. Finally, the Carvells formally employed John Colley, an attorney who was handling another matter for them, to represent their interests in the litigation. Colley, who handled the matter both in the trial court and on appeal, likewise told the Carvells that he did not believe that the plaintiff's claim had any merit.

The action was tried in the Lawrence County Circuit Court in January 1989. At trial, the Carvells argued that the omission of the easement from the deed did not constitute a breach of warranty because the title opinion had mentioned the easement, and because Jane Carvell had informed Baxter, at the time of the sale, of the existence of the pipeline (although she did not inform Baxter of the existence of the easement). Thomas Bottoms testified for the Carvells, stating his belief that the title opinion was sufficient to provide notice to Baxter as to the easement's existence. The jury, however, found that the omission did constitute a breach of warranty, and assessed the damages. at $25,000. The trial court, however, entered an order remitting the damages to $15,000. Both parties appealed from this judgment to the Court of Appeals, and in March 1990, that Court affirmed both the judgment and the trial court's decision to reduce the amount of damages. This Court denied the Carvells' Rule 11 application in June 1990, concurring in the results only.

After the judgment of the Court of Appeals was handed down, the Carvells contacted Paul Plant, told him of the outcome of the case, and asked him to assume responsibility for the payment of the judgment. Plant refused, and the Carvells brought this legal malpractice action against him and Thomas Bottoms in the Lawrence County Circuit Court on May 23, 1990.

Bottoms and Plant subsequently moved for summary judgment, arguing that the one year statutory period of limitations applicable to legal malpractice cases, Tenn.Code Ann. § 28–3–104(a)(2), had expired. In November 1993 the trial court granted defendants' motion. On appeal, however, the Court of Appeals vacated and remanded the judgment, holding that a genuine issue of material fact existed as to whether the Carvells knew or should have known of Bottoms's negligence before May 23, 1989—a year prior to the filing of the malpractice action. We granted defendants' Rule 11 application in order to clarify when a cause of action for legal malpractice accrues for statute of limitations purposes.

---

**2.** Bottoms had left Harwell, Bottoms and Plant to serve as the District Attorney General for the Twenty–Second Judicial District.

**3.** The quotations are taken from the deposition of Jane Gay Carvell.

## ANALYSIS

### A.

■ The standards governing an appellate court's review of a trial court's action on a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn.R.Civ.P. 56 have been met. *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tenn.R.Civ.P. 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991).

■ The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

### B.

The issue of when a legal malpractice action accrues for statute of limitations purposes is governed by a specific formulation of the "discovery rule" applicable to such actions.[4] This rule has been developed in a series of our decisions rendered in the 1980s—specifically *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn.1981); *Security Bank & Trust Company v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn.1983); and *Chambers v. Dillow,* 713 S.W.2d 896 (Tenn.1986). In order to determine if the Court of Appeals ruled correctly in this case, we must first examine these foundational decisions.

In *Ameraccount,* the plaintiff corporation hired the defendant attorneys to register a service mark with the United States Patent Office. Although the defendants submitted the plaintiff's application in December 1974, they learned on March 3, 1975, that the application was incomplete. On March 13, 1975, the defendants remedied the deficiencies of the application, and the Patent Office assigned March 13 as the registration date.

The defendants had, however, neglected to search the Patent Office records to determine if there were pending applications for service marks similar to the one submitted by the plaintiff. This proved to be disastrous, for on August 13, 1975, the Patent Office informed the defendants that an application for a similar mark had been filed on February 28, 1975, thereby conferring precedence on that application in the registration procedure. After receiving this information, the plaintiff's shareholders, at a meeting held in mid-August, concluded that the defendants had been negligent in handling the registration. On April 27, 1976, the Patent Office finally refused to register the plaintiff's mark; and on August 27, 1976, the plaintiff brought a malpractice action against the defendants.

The trial court dismissed the action, holding that since the plaintiff clearly knew of the defendants' negligence at the time it held the shareholders' meeting in mid-August 1975, the one year period of limitations had expired before the suit was filed in late August 1976. The Court of Appeals affirmed the judgment.

This Court, however, reversed the judgment. In our analysis, we first noted that the Court of Appeals was correct in determining that the plaintiff knew of the attorneys' negligence more than a year before the action was filed. However, we went on to say that:

---

4. The general discovery rule was adopted in *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1974); *see* also *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975).

The Court of Appeals erred in holding that the plaintiff's cause of action accrued and the statute of limitations began to run when the plaintiff became aware of the negligence of the defendant attorneys; *still more was required, viz., damage or injury to the plaintiff resulting from that negligence.*

*Ameraccount,* 617 S.W.2d at 878 (emphasis added).

Having determined that some injury was necessary, we reasoned that "although the plaintiff may have been aware of the defendant attorneys' 'negligence' as early as August 18, 1975 ... no damage resulted to the plaintiff by reason of that 'negligence' until on or about April 27, 1976, when the United States Patent Office rejected the plaintiff's application." *Id.* We concluded by quoting, in dicta, the following language used by the California Supreme Court in *Chamberlin v. Smith,* 72 Cal.App.3d 835, 140 Cal.Rptr. 493 (1977):

'A cause of action against an attorney for professional negligence accrues as of the date on which the negligence became irremediable.'

*Id.* at 879 (quoting *Chamberlin,* 72 Cal. App.3d at 842, 140 Cal.Rptr. at 496–97).

Two years later we had another opportunity to apply the discovery rule in the context of a legal malpractice action. In *Security Bank,* persons named Bruce and Holman convinced officials of the Town of Grand Junction, Tennessee, to issue revenue bonds for a construction project. Bruce and Holman agreed to personally guarantee the bonds, which were issued in the Fall of 1972. This endeavor was assisted by the Town's local bond counsel, who prepared an offering circular for the issue.

On October 1, 1974, the bonds defaulted. It subsequently came to light that Bruce and Holman did not have the assets to fulfill their guaranties, as they had indicated in certain financial statements. Soon thereafter, Podrog, a bondholder with legal experience in bond issues, began investigating the incident and determined that the bond issue was fraudulently conceived. In July and September 1975 Podrog wrote letters to the trustee bank in which he recommended that suit be brought on behalf of the bondholders against those parties involved in the bond issue, including the bond counsel.

Although this affair engendered much litigation, including a suit filed against Bruce and Holman to enforce the guaranty contract, the bondholders did not bring suit against the bond counsel for malpractice until November 24, 1976. A judgment in favor of the plaintiffs was awarded by the trial court; but the Court of Appeals reversed, holding that the one year period of limitations had expired.

This Court applied the *Ameraccount* rule and affirmed the judgment. As to the "irremediable injury" aspect of the rule, we stated that:

Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted.* There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong.

*Security Bank,* 673 S.W.2d at 864–65 (emphasis in original) (citations omitted).

As to the second aspect of the rule, the issue of whether the plaintiffs knew or should have known that their injury was a result of the attorney's negligence, we pointed out that Podrog had written letters in July and September of 1975 indicating that bond counsel had been negligent in failing to properly investigate the financial statements and other supporting documents. We concluded by stating:

It is clear, then, that at least as of September 30, 1975, the bondholders knew that they had sustained an injury and were aware of the existence of their claim for malpractice or negligence against bond counsel in failing to discover the fraudulent nature of the financial statements of the

promoters-guarantors which were attached to the offering circular.

*Id.* at 865.

The final decision that we must examine is *Chambers v. Dillow.* In that case, the plaintiff employed attorney Thomas Frost in March 1980 to bring certain claims on his behalf against Washington County. Although Frost filed a complaint immediately, he failed to prosecute the action and the trial court dismissed the case in April 1981. In March 1982 the plaintiff was informed that the action had been dismissed.

The plaintiff hired another attorney, J. Christopher Booth, who wrote Frost in March 1982 and asserted that Frost was negligent in allowing the action to be dismissed. In May 1982 Booth attempted to revive plaintiff's lawsuit against the County by filing a motion to set aside the order of dismissal under Rule 60.02, Tenn.R.Civ.P. In June 1982 the trial court granted that motion; but in April 1983 the trial court granted the County's motion to dismiss on statute of limitations grounds.

In October 1983 the plaintiff filed an action against Frost. The trial court held that the action was barred by the statute of limitations; but the Court of Appeals reversed that judgment, holding that the reinstatement of the action tolled the statutory period of limitation until April 1983—when the suit was dismissed for the second time.

This Court reversed the judgment and dismissed the case. Our first ground for so holding was that because the Rule 60.02 motion was erroneously granted and without legal effect, the action thus accrued in March 1982, when the plaintiff first became aware that his cause of action had been dismissed because of the attorney's negligence.

The effect of the Rule 60.02 motion on the limitations period was not, however, the only ground for reversal. We also stated that:

> There is an additional reason why plaintiff's cause of action for malpractice accrued in March 1982. Assuming that the full extent of his damages were not ascertainable at that time, we have held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong. Plaintiff was liable for the court costs of his dismissed lawsuit, he had suffered a lengthy delay in the progress of his case, even if it be assumed that it was subject to revival, and at a minimum had lost the interest on the use of an anticipated money recovery. Also he was immediately faced with the necessity to incur additional attorney's fees, all as a direct result of Frost's negligence. Those damages, which had matured in March 1982, together with his full knowledge of Frost's negligence, were sufficient *injury* to trigger the accrual of plaintiff's cause of action without regard to whether or not the Washington County lawsuit had reached the irremediable stage.

*Chambers,* 713 S.W.2d at 898–99 (emphasis in original) (citations omitted).

■ The foregoing discussion of *Ameraccount, Security Bank* and *Chambers* establishes that the "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must suffer, pursuant to the *Ameraccount* dicta, an "irremediable injury" as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence. *See also Caledonia Leasing & Equip. Co. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt,* 865 S.W.2d 10, 13 (Tenn.App.1992); *Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirsch,* 828 S.W.2d 388, 393 (Tenn.App.1991).

■ With the elements of the rule in mind, we now turn to the specific arguments of the parties. The defendants assert that, contrary to the Court of Appeals' holding, the Carvells knew or should have known that they had been injured as a result of Bottoms's negligence before May 23, 1989. They support this assertion by pointing out that Jane Carvell knew in early 1986 that they were being sued for a "wrongly prepared deed;" the defendants also cite the fact that Plant told Jane Carvell immediately after the breach of warranty suit was filed that he could not represent the Carvells because a malpractice action could result from

that suit. Therefore, the defendants conclude, the issue of the Carvells' knowledge is clear, and the Court of Appeals erred in holding that it could not have been determined as a matter of law.

In its analysis of the "knowledge" component of the rule, the Court of Appeals attributed great weight to the fact that the Carvells were advised by three lawyers that the breach of warranty suit had no merit: furthermore, the Court implied that a client cannot be deemed, in most circumstances, to have knowledge that it has been injured by an attorney's negligence until the client is so advised by a professional. Although we have never addressed the knowledge component of discovery rule in this specific context in any considerable depth, the standard applied by the Court of Appeals is not the standard we have utilized in other situations involving allegations of professional misconduct. For example, in *Roe v. Jefferson,* 875 S.W.2d 653 (Tenn.1994), a medical malpractice case, we made it clear that:

> It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action'; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

*Roe,* 875 S.W.2d at 657.

Under this standard, the Carvells should have "known" that they had been injured as a result of Bottoms's negligence when they were sued in February 1986. At that time they knew the suit pertained to the "wrongly prepared deed," they knew that Bottoms had prepared the deed, and they were clearly aware that there was at least a possibility that they would incur liability because of Bottoms's actions. Therefore, we cannot approve of the Court of Appeals' rationale on this point.

The plaintiffs argue that despite the Court of Appeals' focus on the "knowledge" component of the discovery rule, that is not the only, or even the most important, issue in this case. Rather, the plaintiffs focus on the "irremediable injury" component of the rule. They contest the Court of Appeals' conclusion that the injury became "irremediable" when they were forced to defend the deed in court in February 1986; instead, the plaintiffs argue that their injury was not yet "irremediable" by May 23, 1989—a year before their malpractice action was filed—because they had not exhausted all possible appeals in the breach of warranty case. The plaintiffs contend generally that where an ongoing lawsuit implicates the conduct of a lawyer, and where the viability of a malpractice claim depends on the outcome of this underlying suit, the statutory period of limitations should be tolled until all the appellate proceedings of the underlying suit have been completed.

Although the "tolling" argument pressed by the plaintiffs has been accepted in some jurisdictions,[5] it is not supported by our cases. In *Security Bank,* we held that the plaintiffs had suffered an "irremediable injury" when the bonds defaulted; and we specifically rejected the plaintiff's contention that the injury was not irremediable until the suit against the guarantors of the bonds was concluded. Similarly, in *Chambers,* we held that the plaintiff had suffered an irremediable injury, in the form of court costs, delays, and additional attorney's fees, when his lawsuit against Washington County was dismissed. We made this determination without regard to "whether or not the Washington County lawsuit had reached the irremediable stage." *Chambers,* 713 S.W.2d at 899. Since our cases establish that the injury need not be "irremediable" in the sense urged by the plaintiffs, we reject their argument. Furthermore, we can no longer even approve of the usage of the adjective "irremediable" in this context: this term, which was first used

**5.** *See e.g., Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991); *Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323 (Fla.1990). However, at least an equal number of jurisdictions reject the rule that the statutory period is tolled until the underlying appeals are concluded. *See e.g., Beesley v. Van Doren,* 873 P.2d 1280 (Alaska 1994); *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal. Rptr.2d 550, 828 P.2d 691 (1992).

in pure dicta by the *Ameraccount* court,[6] has caused confusion from its inception and serves no useful purpose. Therefore, to avoid further confusion, we conclude that henceforth the term "legally cognizable injury" or "actual injury" should be used in this context.

Despite the conflict of the plaintiffs' "tolling" argument with established Tennessee law, there is one specific aspect of that argument that must be addressed. The plaintiffs argue that requiring the client to bring a malpractice action against an attorney before the appeals in the underlying case are concluded has the effect of forcing the client to take inconsistent positions on the same issue in different lawsuits. They note that if this malpractice action accrued when the Carvells were sued in 1986, the plaintiffs were required to sue Bottoms for his negligence in preparing the deed before February 1987, if they wished to preserve their malpractice action. But, the plaintiffs point out, during this same period they were defending the breach of warranty suit in the trial court; and were arguing that the deed was properly drafted and that Bottoms was therefore not negligent. This puts the client in an impossible situation, the plaintiffs urge, because parties are "judicially estopped" from taking contrary sworn positions on the same issue in different lawsuits. *See Melton v. Anderson,* 32 Tenn.App. 335, 222 S.W.2d 666 (1948).

At first blush, these contentions appear to be valid. However, the policy undergirding judicial estoppel—that of preventing a party from gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits—is manifestly absent where a client seeks to defend its attorney's actions against the claims of a plaintiff while simultaneously protecting its own right to recover against the attorney in the event that the client is held liable. Therefore, we conclude that the judicial estoppel rule does not apply in this situation.

Although we conclude that the rule is not technically applicable, we nevertheless realize that having to maintain inconsistent posi-

tions in different lawsuits is somewhat anomalous. Therefore, we agree with the New Jersey Supreme Court that clients can avoid the "discomfort of maintaining inconsistent positions," *see Grunwald v. Bronkesh,* 131 N.J. 483, 621 A.2d 459, 467 (1993), by filing a malpractice action against the attorney and requesting that the trial court stay that action until the underlying proceedings are concluded. *See e.g., Grunwald,* 621 A.2d at 466–67; *Knight v. Furlow,* 553 A.2d 1232, 1236 (D.C.App.1989). In this manner clients can, without conflict, continue to assert their interests in the underlying lawsuit, while preserving any malpractice action they may have against their attorneys.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ.

---

6. The use of the term by the *Ameraccount* court was "pure dicta" because it had no bearing on   the holding of the case.