924 P.2d 1379

David LaMURE and Margaret LaMure,
Plaintiffs–Appellants,

v.

Alvis L. PETERS and Deason, Peters,
Stockton & Company, a Professional
Corporation, Defendants–Appellees.

No. 17166.

Court of Appeals of New Mexico.

Aug. 29, 1996.

Certiorari Denied Oct. 10, 1996.

Zenon F. Myszkowski, Albuquerque, for Plaintiffs–Appellants.

Jonathan B. Sutin, Juliana M. Fong, Sutin, Thayer & Browne, Albuquerque, for Defendants–Appellees.

## OPINION

PICKARD, Judge.

1. This appeal requires us to determine when a cause of action for accountant malpractice accrues, i.e., when taxpayers know or should know of the malpractice of their professional accountants. We must also consider whether various exceptions to the general statute-of-limitations rules, specifically the "altered reasonable person standard," the "continuous harm doctrine," or the "continuous representation doctrine," should be applied in accountant malpractice cases in New Mexico generally or in this case in particular.

2. Plaintiffs, Margaret and David La-Mure (the LaMures), appeal the district court's entry of summary judgment, disposing of their claim of professional accountant malpractice against Alvis Peters (Peters) and the accounting firm of Deason, Peters, Stockton & Company (collectively, Deason), on statute-of-limitations grounds. We hold that summary judgment was appropriate and affirm.

## FACTS

3. The complaint was filed on June 21, 1995. Thus, the action had to have accrued on or after June 21, 1991, or summary judgment was properly granted. See NMSA 1978, §§ 37–1–1 and –4 (Repl.Pamp.1990).

4. For at least 15 years prior to 1990, the LaMures retained Peters and Deason to prepare their individual and business income tax returns. The LaMures were involved in a partnership with two other couples called Town and Country Sports Enterprises. In 1982, the partnership incorporated and thereafter operated as asubchapter S corporation (the Corporation). The gains and losses of the Corporation were reflected on the individual tax returns of the partner-shareholders.

5. On August 17, 1987, the IRS informed Mr. LaMure that he owed approximately $46,500.00 on his individual tax return. Between October 1987 and February 1988, Deason and Peters disputed the claim in correspondence with the IRS. Following a conference with the IRS, Peters advised the LaMures that he had not been able to settle the matter. He told them that he had consulted with Kendall Schlenker, an Albuquer-

que tax attorney. Peters advised the La-Mures that both he and Schlenker felt the matter could be settled without going to tax court.

6. On July 7, 1988, the LaMures received a notice of deficiency from the IRS for the 1983 tax year. The LaMures consulted Peters, who advised them that the IRS notice was incorrect and that a tax court redetermination would resolve the matter in their favor. Based on Peters' representations, the LaMures sued the IRS in tax court instead of consenting to the deficiency assessment.

7. In July 1988, the LaMures and the other partner-shareholders of the Corporation hired Schlenker to handle their legal representation in tax court. The LaMures contend that Peters did not tell them that he and Schlenker were close, personal friends who shared a brother-like loyalty to one another. Neither Peters nor Schlenker informed the LaMures that Peters' son was an associate in the same law firm in which Schlenker was a partner.

8. Peters continued to work with Schlenker and the LaMures to resolve the tax matter. In February 1989, Peters told the LaMures that he had filed amended tax returns, changing the Corporation's status back to a partnership for the tax years of 1983 through 1987. The LaMures were informed that this action effectively cut off the IRS's claims against them.

9. The amended returns did not remedy the situation. The LaMures received deficiency notices on March 1, 1990, for tax year 1986, and on March 11, 1991, for tax year 1987. The LaMures' response petitions were consolidated for trial in tax court with petitions filed by the other partner-shareholders in the Corporation.

10. In 1990, the LaMures stopped using Peters' and Deason's income tax preparation services for present and future returns. However, Peters and Deason continued to provide other services to the LaMures and the Corporation during the tax audit and trial. From October 1990 through Septem-

ber 1993, Deason submitted bills to the Corporation totalling approximately $15,230 for services rendered in connection with the tax dispute.

11. The tax court rendered an opinion in favor of the IRS and against the LaMures and the other Corporation partner-shareholders on November 22, 1993. The LaMures first expressly raised the issue of possible malpractice by Peters and Deason in a letter to Deason dated December 27, 1993. The LaMures filed the malpractice complaint on June 21, 1995. The LaMures alleged that Peters' and Deason's malpractice cost them over $350,000 in taxes, interest, legal fees, and accounting fees during the pendency of the tax court challenge.

12. Deason and Peters filed a motion to dismiss on the ground that the LaMures' action was barred by the four-year statute of limitations. *See* §§ 37–1–1 and –4. Deason and Peters submitted that the LaMures' cause of action for professional negligence accrued before June 21, 1991. The district court granted the motion, and the LaMures appealed.

*DISCUSSION*

*Standard of Review*

13. The standard of review for summary judgment is well settled in New Mexico. Summary judgment should be granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). If the legal effect of undisputed facts is all that remains to be decided, summary judgment is proper. *Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). We consider the evidence in the light most favorable to the nonmoving party. *Gillin v. Carrows Restaurants, Inc.*, 118 N.M. 120, 122, 879 P.2d 121, 123 (Ct.App.1994).

*Date of Actual Injury and Discovery Rule*

■ 14. *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (Ct.App.1974), recognized the special problem faced by a client of a profes-

sional accountant with regard to discovery or awareness of the accountant's malpractice. The *Chisholm* Court noted:

> A person needs special training to know whether his tax return has been erroneously prepared.... In the relationship of accountant and client, the trust and confidence that the client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced. It is the policy of the law to encourage that trust and confidence; likewise it is the duty of the law to protect the client from the negligent acts of the professional person.

*Id.* at 709, 526 P.2d at 1302; *see also Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63, 67 (1985) (recognizing that discovery of a negligently prepared income tax return is "most difficult"). Under this Court's analysis in *Chisholm*, the injury to the client by a professional accountant's malpractice occurs when the client receives notice of a deficiency from the tax commissioner, and not before—when the negligent act may have occurred. *Chisholm*, 86 N.M. at 709, 526 P.2d at 1302. The liability imposed by the IRS becomes the injury which forms the plaintiff's cause of action. *Id.*

15. The rule articulated by *Chisholm* is consistent with that in other jurisdictions. *See International Engine Parts, Inc. v. Feddersen & Co.*, 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 888 P.2d 1279, 1287 (1995) (en banc); *Streib*, 706 P.2d at 67; *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1, 5, (1972); *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421, 425 (1969); *Sladky v. Lomax*, 43 Ohio App.3d 4, 538 N.E.2d 1089, 1091 (1988); *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967); *see also* Michael J. Weber, Annotation, *Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant*, 7 A.L.R. 5th 852, 914–20 (1992). Nevertheless, the LaMures urge us to adopt the "discovery rule" established in other professional malpractice cases, as though the discovery rule was not the underlying basis of the *Chisholm* holding, despite its bright-line selection of the deficiency no-

tice as the time that people should know that they are injured by accountant malpractice. *See Sharts v. Natelson*, 118 N.M. 721, 726, 885 P.2d 642, 647 (1994) (attorney malpractice); *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248, 255–56, 837 P.2d 442, 449–50 (1992) (medical malpractice; expressly relying on *Chisholm* rationale); *Martinez–Sandoval v. Kirsch*, 118 N.M. 616, 620, 884 P.2d 507, 511 (Ct.App.) (clergy malpractice), *cert. denied*, 118 N.M. 731, 885 P.2d 1325 (1994), *and cert. denied*, —— U.S. ——, 115 S.Ct. 2282, 132 L.Ed.2d 285 (1995).

■ 16. In *Sharts*, our Supreme Court reaffirmed its earlier judgment in *Jaramillo v. Hood*, 93 N.M. 433, 434, 601 P.2d 66, 67 (1979), describing a two-pronged test for determining when the statute of limitations for attorney malpractice begins to run. The two prongs are as follows. First, the client must sustain an "actual injury." *Sharts*, 118 N.M. at 724, 885 P.2d at 645. Second, the client must know, or be able to discover through reasonable diligence, the facts essential to the cause of action. *Id.* The injury may be the loss of a legal right, remedy, or interest, or the imposition of a liability. *Id.* at 724 n. 1, 725, 885 P.2d at 645 n. 1, 646. It may take the form of consequential or incidental damages, such as attorney fees or costs incurred as a result of the alleged malpractice. *Id.* at 725, 885 P.2d at 646.

17. The Supreme Court stressed that the degree or nature of the injury is unimportant to the determination of when the client discovered the damage. *Id.* The fact that the client may not, at the point of injury, be able to ascertain the amount of damages, or even whether the damage is permanent, is immaterial. *Id.* The Supreme Court rejected the argument, advanced here by the LaMures, that the injury prong of the inquiry could not be satisfied until their rights were fixed by the entry of a court judgment against them. *Id.* As the Tenth Circuit stated, "*Chisholm* does not turn upon knowing the extent of the injury but only upon ascertaining the fact of injury." *Zamora v. Prematic Serv. Corp.*, 936 F.2d 1121, 1123 (10th Cir.1991).

18. Reading *Chisholm* and *Sharts* together, we hold that the point of discovery in accountant malpractice cases is the receipt of the deficiency notice. " '[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.' " *Sharts,* 118 N.M. at 725, 885 P.2d at 646 (quoting *Foxborough v. Van Atta,* 26 Cal.App.4th 217, 31 Cal.Rptr.2d 525, 530 (1994)). "[T]he plaintiff's cause of action did not arise until the tax deficiency was assessed by the Commissioner of Internal Revenue.... If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action." *Atkins,* 417 S.W.2d at 153. *See also International Engine Parts, Inc.,* 888 P.2d at 1287 (potential liability from defendant's negligence did not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process).

19. In this case, the LaMures sued Peters and Deason because of three tax assessments for deficiencies. The LaMures received the last deficiency notice on March 11, 1991. The last day on which the LaMures could have filed their complaint for malpractice was March 10, 1995. However, their complaint was not filed until June 21, 1995, after the statute of limitations had expired.

### Altered Reasonable Person Standard

■ 20. The LaMures argue that the deficiency notice was insufficient to alert them to their potential claim. They submit that they relied on the representations of Deason and Peters that the deficiency notice was in error and that they would be vindicated in tax court. Underlying much of the LaMures' argument is the suggestion that Deason and Peters exploited the LaMures' reliance on them for information regarding the tax assessments. The LaMures urge this Court to adopt a discovery standard for accountant malpractice cases patterned on the "altered reasonable person" discussed in *Martinez–*

*Sandoval,* 118 N.M. at 621, 884 P.2d at 512. That standard recognizes that a person's judgment may be clouded by circumstances surrounding the events central to the malpractice action. Thus, there would be types of misconduct which by their very nature prevent the discovery of its cause. *Id.* (citing *Riley v. Presnell,* 409 Mass. 239, 565 N.E.2d 780, 785–86 (1991)).

■ 21. In this case, the LaMures argue that the fiduciary relationship between themselves and Peters prevented them from discovering his malpractice. They assert that Peters failed to apprise the LaMures of their potential claim and referred the LaMures to Schlenker—a close, personal friend of Peters—for the tax court litigation. They argue that Schlenker may have been unwilling to tell the LaMures that they had a potential malpractice claim against Peters and Deason due to his friendship with Peters and Peters' son's employment at Schlenker's firm. Thus, they contend that the result of these actions was that the LaMures did not learn that they had a potential claim for malpractice against Deason and Peters until the tax court ruled against them, and that, by then, as determined by *Chisholm,* the statute of limitations on portions of their malpractice claim had run.

22. The altered reasonable person standard does not help the LaMures in this case. There is nothing in the erroneous preparation of income tax returns that prevents discovery by its nature. *See Martinez–Sandoval,* 118 N.M. at 621, 884 P.2d at 512. The LaMures did not allege fraud or collusion between Peters and Schlenker. Peters and Schlenker did not hide the costs incident to the tax court litigation from the LaMures. When they received the deficiency notice, it should have been apparent to the LaMures that, Peters' protestations notwithstanding, there may have been serious errors in the tax returns he prepared and filed and that they would be injured at least in the amount of their litigation fees.

### Continuing Harm

23. The LaMures protest that their injury was of a continuing nature. For purposes

of determining when the statute of limitations began to run, we are concerned only with the point at which the LaMures knew or should have known that they were damaged by Peters' malpractice. *Sharts*, 118 N.M. at 724–25, 885 P.2d at 645–46.

24. The LaMures submit that discovery requires knowledge of all the elements of a cause of action, including the cause or source of the injury. We disagree. The deficiency notices informed the LaMures of the IRS's claim of substantial tax liabilities against them. Multiple deficiency notices for substantial sums of unpaid taxes are not typically received in the normal course of business. These liabilities were red flags to the LaMures that Peters' tax preparation had been faulty. *See id.* at 725, 885 P.2d at 646 (when malpractice results in the imposition of a liability, there has been actual injury). The receipt of the deficiency notice in a tax case is directly analogous to the commencement of a lawsuit in an attorney malpractice case, which our Supreme Court held as a matter of law was sufficient to start the running of the statute of limitations in *Sharts*, 118 N.M. at 726, 885 P.2d at 647.

25. When they received the notices, the LaMures could foresee that they would incur accounting fees while Peters attempted to settle the matter with the IRS. When Peters was unable to do so, the LaMures were required to retain a tax attorney, resulting in more fees. We note that the LaMures stopped using Peters for their income tax preparation in 1990, which was within the four-year limitations period of the first deficiency notice. This suggests that they were aware that Peters' work was flawed. Moreover, if the LaMures had filed within four years after receiving the deficiency notice, the district court could have stayed the malpractice action pending the outcome of the tax court litigation. *See, e.g., Feldman*, 257 A.2d at 425–26.

26. The LaMures rely on *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323, 1326 (Fla.1990), for the proposition that the statute of limitations in accountant malpractice cases should run from the date of the tax court judgment, rather than the date of the notice of deficiency, when, as here, the accountant disagrees with the notice and thus both parties believe that the accountant's advice is correct and not negligent. However, the Florida court's decision was premised on Florida's rule in attorney malpractice cases that a cause of action does not accrue until the underlying litigation, including appeal rights, has concluded. *Id.* at 1325–26. Because the Florida rule was expressly rejected in *Sharts*, 118 N.M. at 725–26, 885 P.2d at 646–47, we shall not adopt its corollaries here.

27. Moreover, the Florida rule is also premised on the idea that the malpractice plaintiff must know that the professional has actually breached the standard of care before the statute of limitations begins to run. *See Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn.1995). However, a plaintiff need not know that the injury constitutes a breach of the legal standard of care; it is sufficient if plaintiff is on notice of the facts constituting the cause of action. *See id.* The rule is the same in Tennessee as in New Mexico. *See Coslett v. Third St. Grocery*, 117 N.M. 727, 735, 876 P.2d 656, 664 (Ct.App.), *cert. denied*, 117 N.M. 802, 877 P.2d 1105 (1994). Thus, like Tennessee, we reject the Florida conclusion of the *Lane* case.

*Continuous Representation*

28. The LaMures urge this Court to adopt the continuous representation doctrine. Applying this doctrine tolls the running of the statute of limitations on a professional malpractice action until the professional relationship terminates with respect to matters underlying the malpractice action. *Sharts*, 118 N.M. at 726, 885 P.2d at 647. New Mexico has considered, but has not applied, the continuous representation doctrine in attorney malpractice cases. *See id.; Brunacini v. Kavanagh*, 117 N.M. 122, 129–30, 869 P.2d 821, 828–29 (Ct.App.1993), *cert. denied*, 117 N.M. 215, 870 P.2d 753 (1994); *Martinez–Sandoval*, 118 N.M. at 622, 884 P.2d at 513.

29. The parties submitted conflicting affidavits in support of their respective position on continuous representation. Peters stated in his affidavit that neither he nor Deason performed any accounting or tax services with regard to the deficiencies after 1990. Mr. LaMure's affidavit stated that Peters continued to represent the LaMures with regard to the deficiencies that led to the tax court litigation, though neither Peters nor Deason prepared any new tax returns for the LaMures after 1990. The LaMures also submitted bills from Deason for Peters' work with Schlenker and the LaMures during the tax court litigation. Thus, there was conflicting evidence regarding whether Peters' representation of the LaMures was continuous. If New Mexico applies the continuous representation doctrine in accountant malpractice cases, these conflicts of material fact might preclude summary judgment. *See National Excess Ins. Co. v. Bingham*, 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987) (summary judgment not appropriate where further factual resolution on a material issue is necessary).

■ 30. In *Sharts*, our Supreme Court stated that it was not inclined to adopt the continuous representation doctrine in that attorney malpractice case. 118 N.M. at 726–27, 885 P.2d at 647–48. For the following reasons, we decline to adopt the continuous representation doctrine in this accountant malpractice case.

31. The continuous representation doctrine is an adaptation of the "continuous treatment" or "last treatment" rule applied in medical malpractice cases. *Wall v. Lewis*, 393 N.W.2d 758, 762 (N.D.1986). The continuous representation doctrine protects the integrity of the professional relationship, permits the allegedly negligent professional to attempt to cure the malpractice, and provides for uninterrupted service to the client. *See id.; see also Cuccolo v. Lipsky, Goodkin & Co.*, 826 F.Supp. 763, 769–70 (S.D.N.Y.1993) (outlining policy considerations supporting application to medical malpractice cases and subsequent extension to legal and accountant malpractice).

32. In this case, however, once the LaMures ceased using Peters' services for ongoing tax matters in 1990, the integrity of the professional relationship was ended by the LaMures' voluntary act. Peters' and Deason's services to the LaMures thereafter were limited to provision of information for the tax court proceeding, either in preparation for trial or at the trial itself.

33. We have held that the receipt of a deficiency notice signals to all parties that an error may have occurred in the preparation and filing of the client's return, and that the accountant's efforts on behalf of the client during the audit have failed. This should alert the client that he or she may have been damaged in the amount of any penalties, fees, or interest on the unpaid amount if the client pays the deficiency. If the client elects to pursue litigation in tax court, the client will incur attorney fees, in addition to potential fees if the tax court outcome is adverse.

34. Once the deficiency notice has issued, then, the taxpayer has knowledge of a potential claim and of the substance and source of that claim. When the client responds to the deficiency notice by terminating the services of the accountant for the client's regular, ongoing needs, the policies behind adopting the continuous relationship exception severely diminish. Thus, even if we were free to question the Supreme Court's recent, express disinclination to adopt the continuous relationship exception, *see State v. Wilson*, 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (1994), we would not do so in this case.

*CONCLUSION*

35. The grant of summary judgment to Peters and Deason is affirmed.

36. **IT IS SO ORDERED.**

APODACA, C.J., and DONNELLY, J., concur.