IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 25, 2016 Session

## JOHN HOWARD STORY, ET AL. v. NICHOLAS D. BUNSTEIN, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-572-14 Kristi M. Davis, Judge**

_____

**No. E2015-02211-COA-R3-CV-FILED-JUNE 9, 2016**

_____

This is a legal malpractice case. Appellees, who are licensed attorneys, represented Appellants in the underlying lender's liability lawsuit. Following dismissal of all defendants in the underlying litigation, Appellants' filed a complaint for legal malpractice against Appellees. The trial court dismissed the legal malpractice case, *inter alia*, on the ground that the one-year statute of limitations for legal malpractice claims had expired. Tenn. Code Ann. §28-3-104(c)(1). Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

David A. Stuart, Clinton, Tennessee, for the appellants, John Howard Story, and Bruce Coffey.

Darryl G. Lowe, Knoxville, Tennessee, for the appellees, Nicholas D. Bunstine, Brent R. Watson, and Jerrold Lance Becker.

### OPINION

### I. Background

Appellees are Nicholas D. Bunstein, Brent R. Watson, Jerrold L. Becker, individually and d/b/a Bunstein, Watson, McElroy & Becker. Appellees, who are all licensed attorneys in the State of Tennessee, represented Appellants John Howard Story and Bruce Coffey in their lender's liability lawsuit against the underlying defendants,

Scott Thompson, First National Bank of Oneida, and People's Bank of the South. In the underlying litigation, on May 7, 2013, the trial court granted summary judgment in favor of First National Bank of Oneida and Scott Thompson. In response to the grant of summary judgment, Mr. Becker allegedly advised Appellants that he would file a motion to correct what he perceived was the erroneous grant of the motion for summary judgment. Mr. Becker filed the motion to alter or amend the trial court's judgment; however, the motion was never heard. Shortly before trial on the remaining claims, Mr. Becker allegedly informed the Appellants that their damages evidence was not ready for trial; accordingly, Mr. Becker advised the Appellants to voluntarily dismiss their remaining claims and to re-file the lawsuit within one year. On November 13, 2013, and upon Appellants' notice of voluntary dismissal, the trial court entered an order of dismissal as to Appellants' remaining claims.

Appellants did not re-file their non-suited claims. Rather, on September 3, 2014, Appellants filed suit for legal malpractice against the Appellees. In their complaint, Appellants asserted, in relevant part that:

> 3. Prior to the filing of the lender's liability action . . . [Mr.] Becker represented to [Appellants] that they had a strong case of liability and damages and that there was a high likelihood the case would ultimately result in a settlement in excess of six figures. He continued to represent . . . that the case was strong and that a substantial settlement would be the ultimate result throughout the entire time the case was pending, until the day he appeared with [Mr.] Watson to explain that they had concluded that the case needed to be voluntarily dismissed.

> 4. In reality, if [Appellants] had any valid claim at all, it was their claim against Scott Thompson as an individual. The claims against the banks were extremely weak and were subject to a statutory defense that a signed written agreement is required to establish a fiduciary relationship with a bank. The claims against the banks were also virtually precluded to the express written terms of the loan documents and other instruments in question and[,] as to one of the bank defendants, barred by the statute of limitations.

> 5. [Appellants] initially agreed to pay [Mr.] Becker $500.00 per hour for his professional services, but later, after becoming aware that such an hourly rate was excessive, [Appellants] and [Mr.] Becker agreed to reduce the hourly rate to $375.00. In reliance on the representations of [Mr.] Becker that they had a strong lender's liability case, [Appellants] together paid [Mr. Becker] several hundred thousand dollars in attorney fees and expenses.

6.  During the course of the proceedings, the question arose as to whether [Appellants] should continue to pay the underlying indebtedness that gave rise to their lender's liability claims.  [Mr.] Becker, negligently, carelessly and recklessly advised the [Appellants] that they should discontinue making their payments, and as a result, [Appellants] were declared in default and have incurred substantial penalties, interest, attorney's fees, expenses, and injury to their credit ratings and reputations.

7.  Contrary to the representations of [Mr.] Becker, the lender's liability case was not a strong case at all . . . .  After a hearing, in which the judge agreed with the contentions of the defendants in the lender's liability action, [Mr.] Becker continued to assure [Appellants] that they had a strong case which would ultimately settle and stated that the judge did not know what he was talking about.  [Mr.] Becker assured [Appellants] that he would file motions to force the chancery court to correct its erroneous rulings.  After one of the banks and the individual defendant, Scott Thomas, were dismissed from the case . . . [Mr.] Becker did not inform [Appellants] that the dismissal purported to be a final judgment as to those defendants, and indicated he would file a motion to correct the error.  Although such motion was filed, it was never brought on for hearing, and with the ultimate voluntary dismissal of the remaining defendant occurring thereafter, any claims against those defendants became forever barred.  As a result, upon voluntary dismissal of the action, [Messrs.] Becker and Watson took action which permanently precluded [Appellants] from maintaining their claims against the only viable defendant in the chancery court lawsuit, the individual defendant, Scott Thompson.

8.  [Appellants] allege that a reasonable attorney would have warned them prior to filing the lender's liability case that their chances of prevailing in such claims were slim to none, especially against the banks, that there would be significant defenses based upon the statute of limitations and the absence of a written agreement establishing a fiduciary relationship, and that as legally competent individuals, [Appellants] would probably be held to the terms of the loan documents they had executed, and prohibited from relying upon any false promises or representations as inducements to persuade them to enter into the transactions.  [Appellants] further allege that a reasonable attorney would have advised them to continue making payments on the indebtedness pending the resolution of the lender's liability claims, and would have explained that since those claims had little or no likelihood of success, defaulting on the indebtedness would have devastating economic consequences and inflict grievous harm upon the credit rating and reputations of [Appellants].

On October 2, 2014, Appellees filed a Tennessee Rule of Civil Procedure 12.02(6)

motion to dismiss the complaint on the grounds that the complaint lacked sufficient specificity and that Appellants' claims were barred by the one-year statute of limitations for legal malpractice cases. Tenn. Code Ann. §28-3-104(c)(1). Appellants opposed the motion to dismiss, *inter alia*, on the ground that the statute of limitations did not run from the May 7, 2013 entry of the "interlocutory" order dismissing one of the banks and Mr. Thompson from the underlying lawsuit. Rather, Appellants asserted that the statute of limitations did not begin to run until the order of dismissal as to Appellants' remaining claims was entered on November 13, 2013. Following a hearing, the trial court entered an order on December 10, 2014 granting, in part, the motion to dismiss. Specifically, the trial court held that Appellants'

> claims . . . are barred by the statute of limitations, §28-3-104(c), with one exception. [Appellants] sustained legally cognizable injury on or about May 7, 2013, when the trial court in the underlying case dismissed their case against two of the three Defendants; and [Appellants] knew or should have known they had a cause of action when Mr. Becker advised he would file a motion in order to "correct the error." The Court determined that [Appellants'] allegations with respect to the November 2013 voluntary dismissal of their remaining claim in the underlying case is a discrete allegation of alleged legal malpractice which is not barred by the statute of limitations . . . .

On January 5, 2015, Appellants filed an amendment to their original complaint, wherein they alleged, in relevant part, "that all of their claims for litigation malpractice and fraud, misrepresentation, and deceit against the [Appellees] in this cause are timely filed for purpose of the one year statute of limitations." Appellants also averred a claim for breach of "confidential and fiduciary relationship."

On January 21, 2015, Appellees filed a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings arguing that Appellants did not sustain any damages from any act or omission by Appellees *vis-à-vis* the voluntarily dismissed claims. Specifically, Appellees stated that the trial court had not awarded attorney's fees to any of the defendants in the underlying lender's liability lawsuit and that Appellants had not accrued additional attorney's fees related to the voluntary dismissal. Appellees also moved for dismissal of the breach of "confidential and fiduciary relationship" claim on the ground that this claim relied on the same operative facts as Appellants' claim for legal malpractice. Following a hearing, on February 20, 2015, the trial court entered an order, wherein it: (1) reaffirmed its previous dismissal of all claims except those that were voluntarily dismissed; (2) denied Appellees' motion based on the absence of damages (specifically, the court stated that this issue was better suited to summary judgment); and (3) granted Appellees' motion as to Paragraphs 10 and 11 of the amended complaint, which paragraphs asserted that all claims were timely filed and that Appellees

were liable for breach of confidentiality and breach of fiduciary duty.

On February 29, 2015, Appellants filed a motion to revise the previous order and to reinstate previously dismissed claims. Therein, Appellants argued, *inter alia*, that the trial court should reconsider its dismissal of Appellants' legal malpractice claims based on the filing of the amendment to the original complaint and Appellants' contention that the statute of limitations had not run on their malpractice claims.

On April 17, 2015, Appellees filed a motion for summary judgment, asserting that Appellants did not sustain any damages stemming from the voluntary dismissal. On October 19, 2015, the trial court entered an order granting the motion for summary judgment. Specifically, the court held that Appellees had affirmatively established that Appellants suffered no harm as a result of the voluntary dismissal because they were allowed to re-file their claims within one year. The court further held that Appellants had sustained no out-of-pocket damages as a result of the non-suit because they did not have to pay attorney's fees or costs associated with the voluntary dismissal. Appellants appeal.

## II. Issues

1. Whether the trial court erred when it partially granted Appellees' motion to dismiss for failure to state a claim upon which relief can be granted based upon the one year statute of limitations for malpractice actions against attorneys.

2. Whether the trial court was in error when it partially granted Appellees' motion for judgment on the pleadings.

3. Whether the trial court was in error when it denied Appellants' motion to revise previous order and to reinstate previously dismissed claims.

4. Whether the trial court was in error when it granted Appellees' motion for summary judgment, thereby dismissing what remained of Appellants' case in its entirety, on the basis of the statute of limitations affirmative defense.

## III. Standard of Review

As set out above, the trial court dismissed Appellants' claims on several grounds. First, the trial court dismissed the legal malpractice claims arising from the May 7, 2013, judgment entered in the underlying lender's liability lawsuit in favor of National Bank of Oneida and Scott Thompson. The ground for the trial court's dismissal of the legal

malpractice claims was that the one-year statute of limitations had run. Next, the trial court granted Appellees' Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings, thereby dismissing Appellants' additional claims for breach of confidentiality and breach of fiduciary duty, which were set out in the amendment to the original complaint. Finally, on the ground that Appellants had sustained no damages, the trial court granted Appellees' motion for summary judgment as to Appellants' claim for legal malpractice arising from the voluntary dismissal of People's Bank of the South. Although the trial court employed various procedure in adjudicating Appellants' claims, because all of Appellants' claims stem from the same underlying facts, and because these claims were brought under one complaint (and an amendment thereto), we conclude that the trial court should have addressed all of the claims under the Tennessee Rule of Civil Procedure 12.02(6) motion. Accordingly, we will apply the standard of review applicable to Rule 12.02(6) motions.

The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing *Trau–Med.*, 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see also Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo* with no presumption that the trial court's decision was correct. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 429 (Tenn. 2011).

## IV. Analysis

The basis for the trial court's grant of Appellees' Tennessee Rule of Civil Procedure 12.02(6) motion was that the statute of limitations for legal malpractice had run. Specifically, the trial court concluded that the one-year statute of limitations began to run on May 7, 2013 with the entry of the order dismissing National Bank of Oneida and Scott Thompson from the underlying lender's liability lawsuit. At both the trial level and on appeal, Appellants assert that the statute of limitations did not begin to run until November 13, 2013, when the trial court entered the order of voluntary dismissal as to

the remaining defendant, People's Bank of the South.

In ***John Kohl & Co., P.C. v. Dearborn & Ewing***, 977 S.W.2d 528 (Tenn. 1998), the Tennessee Supreme Court instructed:

> The statute of limitations for legal malpractice is one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. ***Shadrick v. Coker***, 963 S.W.2d 726, 733 (Tenn. 1998); ***Stanbury v. Bacardi***, 953 S.W.2d 671, 677 (Tenn. 1997).

> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. ***Carvell v. Bottoms***, 900 S.W.2d 23, 28-30 (Tenn. 1995). An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. *See **LaMure v. Peters***, 122 N.M. 367, 924 P.2d 1379, 1382 (1996). An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. *See **State v. McClellan***, 113 Tenn. 616, 85 S.W. 267, 270 (Tenn. 1905) ("[A negligent act] may not inflict any immediate wrong on an individual, but ... his right to a remedy ... will [not] commence until he has suffered some actual inconvenience.... [I]t may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage...."). However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility. *See **Caledonia Leasing v. Armstrong, Allen***, 865 S.W.2d 10, 17 (Tenn. App. 1992).

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. ***Carvell***, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is

- 7 -

informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date-whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id*. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Shadrick*, 963 S.W.2d at 733. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn.1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Shadrick*, 963 S.W.2d at 733; *Wyatt v. A– Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995). Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims. *Wyatt*, 910 S.W.2d at 855.

*Id.* at 532-33

In reaching its decision that the statute of limitations had run on the Appellants' legal malpractice case, the trial court relied on this Court's opinion in *Cherry v. Williams*, 36 S.W.3d 78 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Dec. 11, 2000). On appeal, Appellants' contend that the *Cherry* case is not applicable to the instant appeal. We disagree. While the facts of the *Cherry* case differ from those presented in this case, the law outlined in *Cherry* is, nonetheless, applicable. In *Cherry*, this Court explained:

In litigation, the most easily identifiable time when rights, interests, and liabilities become fixed is when a court enters judgment. A judgment, after all, is "an adjudication of the rights of the parties in respect to the claim [s] involved." *Ward v. Kenner*, 37 S.W. 707, 709 (Tenn. Ch. App. 1896) (defining judgment). Accordingly, most courts have made the entry of an adverse judgment the starter pistol for the running of the statute of limitations on litigation malpractice. *See Laird v. Blacker*, 2 Cal.4th 606, 7 Cal.Rptr.2d, 550, 828 P.2d 691, 696 (1992); *Jason v. Brown*, 637 So.2d 749, 752 (La. Ct. App. 1994); *see also* Tyler T. Ochoa & Andrew Wistrich, *Limitation of Legal Malpractice Actions: Defining Actual Injury and the*

*Problem of Simultaneous Litigation*, 24 Sw. U .L. Rev. 1, 27-29 (1994). It is a court's judgment that decrees the loss of a right or remedy or imposes a legal liability. Thus, when a judgment is entered, a "legally cognizable injury" occurs.

*Id.* at 84-85.

Here, Appellants suffered an actual injury in the underlying lender's liability action when the trial court granted summary judgment in favor of First National Bank of Oneida and Scott Thompson on May 7, 2013. At that point, Appellants had lost their case as to these defendants. Nonetheless, Appellants argue that Mr. Becker continued to assure them that the May 7, 2013 order was erroneous and that he would take measures to correct it. Based upon Mr. Becker's continued assurances, Appellants contend that the entry of the May 7, 2013 order did not start the running of the statute of limitations on their legal malpractice claim. We disagree. As this Court explained in *Cherry*:

> A lawyer's rosy characterization of an order adverse to the client does not amount to fraudulent concealment of malpractice. *See **Riddle v. Driebe***, 153 Ga.App. 276, 265 S.E.2d 92, 95 (1980). As long as the client is aware of the fact that the court has ruled against his or her rights or interests, arguably due to the lawyer's mishandling of the case, then it matters not how counsel may try to downplay or "spin" the bad result. At that point the client is aware of the fact of injury. For statute of limitations purposes, that awareness is not negated by the lawyer's assurances that the court rendering the adverse order got the law wrong. Nor does it matter that the lawyer states that he or she believes that an appellate court will reverse the adverse order. As we have previously said, "[W]e do not believe that reliance upon erroneous legal advice can operate to toll the statute of limitations," inasmuch as the discovery rule relating to injury only applies to matters of fact unknown to a prospective plaintiff, not to matters of law. ***Spar Gas, Inc. v. McCune***, 908 S.W.2d 400, 404 (Tenn. Ct. App. 1995).

*Cherry*, 36 S.W.3d at 86.

Appellants contend that the statute of limitation on their legal malpractice case did not begin to run until People's Bank of the South, the last defendant in the underlying lawsuit, was dismissed by order of November 13, 2013. Although, with the dismissal of the People's Bank of the South, Appellants' underlying lawsuit was ostensibly lost, from the foregoing authority, finality and exhaustion of all remedy is not the gravamen of discovery in legal malpractice cases. Rather, "[i]t is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678. Here, we conclude that Appellants had sufficient knowledge of an injury,

which was likely based on some legal malpractice, on May 7, 2013, when their claims against National Bank of Oneida and Scott Thompson were dismissed. Accordingly, the statute of limitation on Appellants' legal malpractice case began to run on May 7, 2013. Therefore, Appellants' September 3, 2014, legal malpractice complaint was untimely, and the trial court did not err in dismissing the complaint against Appellees. Having concluded that the trial court should have dismissed the legal malpractice complaint, *in toto*, upon the running of the statute of limitations, we pretermit Appellants' remaining issues.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's orders. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, John Howard Story, Bruce Coffey, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE