FILED

December 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

ESTATE OF JAMES ARCHER MUSE,  )
                              )
        Claimant/Appellee,    )            No. 03A01-9704-CC-00126
                              )
v.                            )            On Appeal from the
                              )            Tennessee Claims Commission
STATE OF TENNESSEE,           )            (Eastern Division) No. 15783
                              )
        Defendant/Appellant.  )

_____

FROM THE TENNESSEE CLAIMS COMMISSION
THE HONORABLE MICHAEL S. LACY, CLAIMS COMMISSIONER


**Daniel P. Street**
Kingsport, Tennessee
Attorney for Appellee


**John Knox Walkup**
Attorney General and Reporter
**Michael E. Moore**
Solicitor General
**Mary M. Bers**
Assistant Attorney General
Nashville, Tennessee
Attorneys for Appellant


**AFFIRMED AND REMANDED**


OPINION FILED: _____


**WILLIAM H. WILLIAMS, Senior Judge**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**
**ALAN E. HIGHERS, J.**

## OPINION


This is a negligence case of slip and fall against the State of Tennessee.  Claimant/Appellee

(Muse) was injured after slipping on piping on the campus of Eastern Tennessee State University, a state university owned by the State of Tennessee. Muse filed a Complaint against the State pursuant to T.C.A. § 9-8-307(a)(1) which provides in part:

> The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state falling within one (1) or more of the following categories:
>
> (C) Negligently created or maintained dangerous conditions on state controlled real property. . . .

The State denied liability upon the defense of the "open and obvious" rule which will be discussed later in this opinion. The State further contended that if the State was negligent at all, Muse's own negligence was equal to or greater than any negligence by the State, thereby barring recovery. The Tennessee Claims Commission found the liability of the State to be 60% and the liability of Muse to be 40%. Damages for Muse were assessed at $295,826.69 by the Commission. Apportioning damages according to the comparative liability of the parties, the Commission awarded damages to Muse of $177,496.01. We affirm.

## STATEMENT OF THE CASE

The claimant filed a Complaint for Damages in this negligence claim with the Division of Claims Administration on February 21, 1991. Following T.C.A. § 9-8-402(c), the Division of Claims Administration transferred the claim to the Claims Commission on May 10, 1991. The defendant filed its answer on June 20, 1991. The Claims Commissioner, Eastern Division, Michael S. Lacy, entered an order on June 4, 1992 setting this claim for hearing on June 17, 1992. On July 18, 1996, Commissioner Lacy entered a Final Decree finding liability and awarding damages to the claimant. The defendant filed a motion for an *en banc* hearing or motion to alter and amend the judgment on August 14, 1996. The Claims Commission entered its order denying the defendant's motion on March 13, 1997. Following Tenn. R. App. P. 12(II), defendant filed a notice of petition for review on April 9, 1997. During the pendency of the appeal, counsel for the claimant filed a notice of substitution of parties upon the claimant's death.

## STATEMENT OF THE FACTS

Claimant/Appellee, James Archer Muse (Muse), was employed to deliver food coupon

booklets for a telemarketing company. On May 4, 1990, Muse was running[1] across the campus of East Tennessee State University (ETSU), a state university, delivering the booklets. At one point, Muse attempted to cut across a courtyard. Bordering the courtyard were round, metal pipe segments. Attempting to hop over the piping, Muse stepped on a pipe segment with his left foot. As he attempted to propel his right foot over the piping, his left foot got caught in the piping.[2] Muse testified that he "heard three cracks and a pop" and fell down. As a result, Muse suffered a broken hip.

The Claims Commission found the State to be 60% liable and Muse to be 40% liable for the injuries sustained by Muse. The Commission determined that Muse's total damages equaled $295,826.69. This assessment included: $10,826.69 for past medical expenses; $25,000.00 for prospective future damages for a hip replacement; $195,000.00 for lost earning capacity; and $90,000.00 for future medical expenses, permanent impairment, pain and suffering, loss of enjoyment of life, and other damages. As a result, the State was ordered to pay Muse the sum of $177,496.01.

On appeal, the State contends that the Commission erred in its finding that the State is liable. According to the State, it owed no duty to Muse since the danger was open and obvious. In addition, the State challenges the Commission's assessment of Muse's lost earning capacity. The State asserts the Commission erred by comparing the pre-injury earning capacity of a person with a college education with the post-injury earning capacity of a person without a college education. On appeal, Muse contends that the Commission should have determined that the State was even greater at fault and should have found that Muse had suffered even greater damages.

**CONCLUSIONS OF LAW**

This Court has jurisdiction to consider appeals from the Claims Commission pursuant to Tennessee Code Annotated § 9-8-403(a)(1) (Supp. 1997).[3] Our review of the Commission's findings is *de novo* on the record with a presumption of correctness of the Commission's findings. T.R.A.P.

---

[1]Muse testified that his pace was "a little bit better than a jog."

[2]Muse's foot apparently got caught in a segment of the pipe referred to in the record as a "'C'" opening."

[3]Although this claim arose May 4, 1990, the 1997 Supplement amendments affect adjective law only and not substantive law.

13(d). Questions of law are *de novo* with no presumption of correctness. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

We first address each party's contention with regard to the Commissioner's apportionment of fault. The State claims that the trial court should have barred Muse from recovery. The Commissioner held that "it does not appear to be appropriate to have expected Mr. Muse to be aware of all of the potential combinations of risks associated with the piping and the related stakes, holes and 'C' openings." The State claims that the Commissioner erred by not barring Muse from recovery in light of the "open and obvious rule."

According to the open and obvious rule, an injured invitee may be barred from recovery for injuries sustained on the owner's property if the hazard is as readily apparent to the invitee as to the owner. ***See, e.g., Kendall Oil Co. v. Payne***, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (1955); ***Cooperwood v. Kroger Food Stores, Inc.***, No. 02A01-9308-CV-00182, 1994 WL 72517, *3 (Tenn. App. 1994). This is premised on the notion that:

> [l]iability is sustained on the ground of the owner's superior knowledge of a perilous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner.

***Kendall Oil***, 41 Tenn. App. 201, 293 S.W.2d at 42.

The viability of the open and obvious rule has been repeatedly questioned since Tennessee's adoption of the comparative fault regime in ***McIntyre v. Ballentine***, 833 S.W.2d 52 (Tenn. 1992). There appears to be some degree of confusion within the Court of Appeals concerning the appropriate treatment of the rule in the post-***McIntyre*** era. ***See, e.g., Coln v. City of Savannah***, No. 02A01-9507-CV-00152, 1996 WL 544652 (Tenn. App. Sept. 25, 1996), *perm. to appeal granted* (Feb. 2, 1997); ***Cooperwood v. Kroger Food Stores, Inc.***, No. 02A01-9308-CV-00182, 1994 WL 725217 (Tenn. App. Dec. 30, 1994); ***Shope v. Radio Shack***, No. 03A01-9508-CV-00288, 1995 WL 733885 (Tenn. App. Dec. 7, 1995); ***Jones v. Exxon Corp.***, No. 02A01-9507-CV-00159, 1996 WL 482674 (Tenn. App. Aug. 27, 1996).

Regardless of the approach taken, we find that the hazard in the present case was not open and obvious. The evidence in the record indicates that the danger was not as "obvious, reasonably apparent or as well known" to Muse as to ETSU. ***Kendall Oil***, *supra.* The Commissioner did not err by refusing to bar Muse from recovery.

Muse argues that the Commissioner should have attributed a greater percentage of the fault to the State. The evidence supports the Commissioner's finding that "Muse's conduct was a significant factor as a cause in fact of the harm." The evidence indicates that Muse was running and that he was familiar with the area since he had attended school there. The Commissioner properly considered the extent to which Muse assumed the risk of the injury since Muse was capable of observing "that the piping consisted of very heavy metal, had a silver finish, was rather round and smooth, and was potentially slick." We affirm the Commissioner's apportionment of fault.

We now turn to the Commissioner's assessment of damages. Both parties contend that the Commissioner erred while calculating Muse's lost earning capacity. According to the State, the Commissioner determined the pre-injury earning capacity by considering a person with a college education. On the other hand, when the Commissioner determined Muse's post-injury earning capacity, it considered a person without a college education. Muse asserts that the evidence preponderates in favor of increasing Muse's award for loss of earning capacity.

The Commissioner made its determination of Muse's lost earning capacity based on testimony by a vocational expert, an economist, and Muse. The vocational expert, Dr. Norman Hankins, testified that Muse's pre-injury earning capacity as a college graduate was $25,549.00 per year. Dr. Hankins testified that as a result of the injury, Muse could earn no more than $7.00 per hour. Based on these figures, Dr. John Moore, the economist, concluded that Muse had suffered a total lost earning capacity of $544,620.00. Dr. Moore also made a second calculation based on the earning capacity of a college graduate yet reduced by 50% to factor in loss of the rate of advancement resulting from the injury. Based on this assessment, Dr. Moore calculated Muse's loss of earning capacity at $184,216.00.

After considering this testimony, the Commissioner assessed Muse's pre-injury earning capacity "somewhere in between $15,600.00 and $24,549.00." This was due to the fact that Muse was earning approximately $15,600.00 per year at the time of the injury. "Upon a consideration of the assumptions, calculations and conclusions of both the vocational expert and the economist, as well as the testimony of Mr. Muse and the record as a whole," the Commissioner concluded that Muse's loss of earning capacity equaled $195,000.00.

After a careful examination of all the evidence in the record on the question of loss of earning capacity, we hold that the evidence preponderates in favor of the Commissioner's findings. Both

parties had ample opportunity during the trial and did proffer evidence concerning the proper calculation of earning capacity as well as to expose flaws in the methodology used by their opponent. The record indicates that the Commissioner thoroughly considered this evidence when making his determination. We find no abuse of discretion by the Commissioner. The Commissioner's determination of Muse's loss of earning capacity is affirmed.

The decision of the Commission is affirmed. Costs on appeal are taxed against the Appellant for which execution may issue if necessary.

_____
WILLIAM H. WILLIAMS, SENIOR JUDGE


CONCUR:


_____
W. FRANK CRAWFORD, P.J., W.S.


_____
ALAN E. HIGHERS, J.

IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT KNOXVILLE

_____

ESTATE OF JAMES ARCHER MUSE,   )
          )
      Claimant/Appellee,   )      No. 03A01-9704-CC-00126
          )
v.          )      On Appeal from the
          )      Tennessee Claims Commission
STATE OF TENNESSEE,   )      (Eastern Division) No. 15783
          )
      Defendant/Appellant.   )

---

## J U D G M E N T

---

This cause came on to be regularly considered by the Court on the record and for the reasons stated in the Court's opinion of even date, it is ordered that:

1.      The Final Decree of the Tennessee Claims Commission is affirmed and this case is remanded for further proceedings as are necessary.

2.      Costs of the appeal are assessed against the Appellant, for which execution may issue, if necessary.

_____
WILLIAM H. WILLIAMS, SENIOR JUDGE


_____
W. FRANK CRAWFORD, P.J., W.S.


_____
ALAN E. HIGHERS, J.