# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**December 30, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **DAWN LOUISE WADDELL WILLIAMS,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Sumner Chancery No. 89C-244 |
| | ) | |
| **RICHARD DANCE and FRED C. DANCE,** | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 01A01-9701-CH-00008 |
| **THOMAS WICKLIFF COMER, Individually and as Trustee, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## APPEAL FROM THE CHANCERY COURT OF SUMNER COUNTY
## AT GALLATIN, TENNESSEE

### THE HONORABLE THOMAS E. GRAY, CHANCELLOR

For the Plaintiff/Appellee:          For the Appellants,
Richard Dance and Fred C. Dance:

John R. Phillips, Jr.          Richard Dance
Timothy R. Rector          Fred C. Dance
Gallatin, Tennessee          Attorneys Pro Se
                 Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

# OPINION

This case involves the interpretation of a contingency fee employment agreement for two attorneys. The attorneys were employed by the plaintiff to file suit to challenge the validity of a trust and deed. After the plaintiff requested that the attorneys withdraw from representing her, the case was settled. The attorneys thereafter filed a motion for attorney's fees under the contingency fee contract. The trial court denied the attorneys' motion for attorney's fees. We affirm.

The facts involved in the underlying litigation regarding the trust and deed are quite involved. We will discuss only the facts pertinent to the claim by the attorneys, Richard Dance and Fred C. Dance ("the Dances") against their former client, Dawn Louise Waddell Williams ("Williams").

In 1936, R.W. Comer, Guy L. Comer and Mont B. Comer created a revocable trust (the "Comer Trust") with various classes of beneficiaries. Guy Comer was the appointed trustee. The trust was made irrevocable by a 1941 amendment. In 1951, Mont B. Comer transferred certain real property to Guy Comer as trustee, to be held for the benefit of Ann Comer Shannon and Jacqueline Comer Waddell and their issue. These two transfers were referred to in subsequent litigation as the "Shannon Deed" and the "Waddell Deed." Upon Jacqueline Comer's death in 1987, Williams, as one of Jacqueline Comer's nine children, became an income beneficiary of the "Waddell Deed" trust established originally for the benefit of her mother.

In 1969, Thomas W. Comer ("Trustee Comer") became the successor trustee upon the death of Guy Comer. In 1989, Trustee Comer determined that the "Shannon Deed" and "Waddell Deed" properties held in trust were not actually part of the Comer Trust but instead were separate trusts. Trustee Comer then notified all parties who were beneficiaries under the Comer Trust of his determination.

Williams then contacted the Dances for legal advice. Richard Dance advised Williams by letter that she should file suit to determine the validity of the original Comer Trust, as well as the Shannon Deed and the Waddell deed. The letter stated in part:

> You have recently discussed with me that letter. . . addressed to you by T.W. Comer [successor Trustee]. It is now thought that the best procedure would be to bring suit in the Chancery Court of Sumner County, Tennessee against T.W. Comer and all other beneficiaries named under that Trust [the Comer Trust] created by your grandfather, M.B. Comer and his brothers to construe the meaning of that Trust as well as two deeds executed by your grandfather and grandmother on or about August 15, 1951. The purpose of the lawsuit is to determine the validity of said Trust and deeds.

As discussed with you, we do not guarantee the results of said lawsuit. It is possible, of course, that the suit could be lost and you would be charged with the costs. Notwithstanding that possibility you have authorized the filing of the lawsuit.

*****

Attorney's fees . . . shall be 40% of the amount you receive from this litigation, with the proviso that in the event there are proceedings in the Appellate Court, then my fee shall be 50% of all sums which you may collect. The aforementioned fees, which you will be obligated for and all fees awarded to me out of the amount you receive, are in addition to any and all fees awarded to me by the Court and payable out of the Trust and/or deed which are the subject of the litigation.

The complaint filed by Dance on Williams' behalf alleged that the Comer Trust and Waddell Deed were violative of the rule against perpetuities. The complaint sought a declaration that the Comer Trust and Waddell Deed were void, as well as the appointment of a receiver and/or interim trustee to take possession, administer and distribute the property in question and the income from the property. The complaint also sought a determination of Williams' ownership interest in the Comer Trust and Waddell Deed, as well as an accounting.

In April 1992, the Dances, on Williams' behalf, filed a motion for partial summary judgment, contending that the Comer Trust and Waddell Deed violated the rule against perpetuities. Trustee Comer filed a response and counter-motion for partial summary judgment, asserting that the Comer Trust and Waddell Deed were not violative of the rule against perpetuities.

After a hearing, the trial court entered an order ("the January 1993 Order") denying Plaintiff's motion for partial summary judgment. It also filed a memorandum opinion finding that the Waddell Deed and the Comer Trust did not violate the rule against perpetuities. Trustee Comer then filed a motion to clarify the January 1993 Order, asking the trial court to grant his cross-motion for partial summary judgment.

Subsequently, the trial court entered an order ( the "April 1993 Order") expressly granting Trustee Comer's motion for partial summary judgment. The April 1993 Order also designated the January 1993 Order as a final judgment, pursuant to Tenn. R. Civ. P. 54.02, and stated expressly that the Waddell Deed and the Comer Trust did not violate the rule against perpetuities.

After the April 1993 Order, the Dances filed two pleadings in Williams' suit. In response to the trial court's pre-trial conference order, they filed a pre-trial memorandum in March 1994, reasserting the previously rejected theory of a violation of the rule against perpetuities. In March 1994, the Dances also filed a motion to set aside the April 1993 Order granting partial summary judgment to Trustee Comer on the issue of the rule against perpetuities, apparently because of

procedural problems. For want of opposition, this motion was granted. However, the granting of the motion to set aside the April 1993 order did not affect the trial court's January 1993 ruling that the Waddell Deed and the Comer Trust did not violate the rule against perpetuities.

In early September 1994, Mr. Phillip Kelly, an attorney representing some of the other children of Jacqueline Comer Waddell in matters involving the Comer Trust, proposed that certain real property encompassed in the Waddell Deed be sold, with the proceeds invested for the benefit of the nine children of Jacqueline Waddell, including Williams. Williams met with Richard Dance to discuss the letter. Shortly thereafter, Williams told the Dances she no longer wanted them to represent her. As a result, in mid-September 1994, the Dances filed a motion to withdraw from representing Williams in the lawsuit. The Dances also moved to fix an attorney's lien for services rendered to Williams. The trial court granted the motion to withdraw and reserved a ruling on the issue of fixing an attorney's lien.

Subsequently, at a hearing on the remaining issues in the lawsuit, Williams represented herself and indicated she did not agree with Mr. Kelly's settlement proposal. Williams eventually settled the various contested issues in June 1996, approximately forty-one months after the trial court had ruled against Williams on the rule against perpetuities issue and nearly twenty months after the Dances had withdrawn from representing Williams.

The settlement entered into by Williams called for certain real property from the Waddell Deed to be sold by Trustee Comer and converted into cash proceeds. The cash proceeds were then invested in assets producing a regular income stream for the beneficiaries, including Williams. The settlement did not invalidate the Comer Trust. The consent decree stated that the trial court had "heretofore determined" that neither the Comer Trust, the Waddell Deed, nor the Shannon Deed "violate the rule against perpetuities."

In September 1996, the Dances filed a motion for an award of attorney's fees, seeking:

(1) an attorney's fee in this case as a result of that contract of employment between Richard Dance and Fred C. Dance and the Plaintiff and impose a lien for that fee on any recovery of money by the Plaintiff,
(2) an attorney's fee of Sixty Thousand Dollars ($60,000.00) payable from that property commonly referred to in this litigation as the Waddell Deed property, and
(3) an attorney fee of Thirty Thousand Dollars ($30,000.00) payable from the R.W.COMER & SON Trust all for work done by the movants in connection with the above captioned litigation.

The Dances argued that the settlement to which Williams ultimately agreed was similar to a proposal the Dances had previously discussed with Williams. The trial court denied the Dances' motion for an award of attorney's fees. From this decision, the Dances now appeal.

On appeal, the Dances assert that the evidence shows that Williams entered into a contingent fee employment arrangement with the Dances, and that it was terminated without cause. They maintain that their discharge was an attempt to defeat the fee arrangement that entitled the Dances to 40% of any recovery that Williams received from the ensuing litigation.

Williams asserts that the attorney employment agreement states that the purpose of the lawsuit was "to determine the validity of" the trust, that is, to secure a ruling by the trial court that the trust was in violation of the rule against perpetuities and therefore invalid. This was not done. Williams notes that she was a beneficiary of the trust and would have received some benefit from it, regardless. The settlement merely changes the form of the corpus of the trust, from real estate to cash, Williams contends. Consequently, no "contingency" was satisfied and the Dances are entitled to no fee.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

In construing a contract between an attorney and a client, the general rules of contract law apply. *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. App. 1995). The court must not only look at the language of the contract, but must also seek to ascertain the intention of the parties. *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. App. 1986). The court will adopt the construction which is reasonable and fair. *Id.* at 645-46. In a contract between an attorney and a client, ambiguities are construed against the attorney who drew the contract. *Alexander*, 903 S.W.2d at 694.

Generally, a contingency fee agreement is understood to be "an agreement for legal services under which the amount or payment of the fee depends, in whole or in part, on the outcome of the proceedings for which the services were rendered." *Id.* at 696. Contingent fees are frequently higher than hourly fees because the attorney "has assumed a significant degree of risk that he or she will

4

not be compensated if the outcome is not successful." *Id.*

In this case, we must determine whether enforcement of the contingency fee contract, under the interpretation advanced by the Dances, would contravene Disciplinary Rule 2-106 of the Code of Professional Responsibility, Tennessee Supreme Court Rule 8. DR 2-106 provides:

> (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
> (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.

These factors are guides; the reasonableness of the fee is determined by the circumstances in each individual case. *White v. McBride*, 937 S.W.2d at 796, 800 (Tenn. 1996).

One factor which must be considered is whether there was a true contingency; that is, whether there was a genuine risk of nonrecovery. *Id.* at 801. In *White v. McBride*, an attorney entered into a contingency fee contract with a client on a probate matter. *Id.* at 797. The client was the surviving spouse of a decedent who had left nothing in her will to the client. *Id.* It was undisputed that the surviving spouse was entitled, as a matter of law, to one-third of the decedent's estate. *Id.* at 799. The only contingency was how large a disbursement the client would receive. *Id.* The attorney argued that there was a genuine risk of nonrecovery because relatives removed some of the assets to Texas. *Id.* at 800. However, the Court noted that the attorney was not aware of the removal of assets at the time the contract was executed, and concluded that the attorney could not have believed there was a genuine risk of nonrecovery at the time the contract was executed. *Id.* at 801. Considering this factor, as well as the other factors set forth in DR 2-106, the Court determined that the fee sought to be charged under the agreement was "clearly excessive" and that the agreement was therefore unenforceable. *Id.*

In this case, Williams is a beneficiary of the trust at issue, and would have received benefits from the trust even if the lawsuit had never been filed. The settlement entered into did not increase

5

Williams' proportionate share of the income from the trust. Instead, there was a change in the form of some of the corpus of the trust, from real estate to cash proceeds, and investment of the cash proceeds in order to provide an income stream to all beneficiaries, including Williams.

Therefore, it appears that the only true contingency involved was whether the trust would be declared invalid as violative of the rule against perpetuities. This objective was not accomplished. As to the remainder of the litigation, there was no true risk of non-recovery, since Williams remained a beneficiary of the trust. As in *White*, the only true contingency was how large a disbursement the client would receive. *White*, 937 S.W.2d at 799. Therefore, under the interpretation of the agreement advanced by the Dances, aside from the issue regarding the validity of the trust, there was no genuine risk of nonrecovery. The agreement would entitle the Dances to 40%[1] of any monies received by Williams, under circumstances in which there was no assumption of "a significant degree of risk that [they would] not be compensated if the outcome [were] not successful." *Alexander*, 903 S.W.2d at 696. The Dances here seek $90,000 in fees, despite the fact that the primary objective, obtaining a declaration that the trust was invalid, was not accomplished. This indicates a likelihood that the fees sought under the Dances' interpretation of the employment agreement would be excessive under DR 2-106.

Against this backdrop, we must examine the agreement and ascertain the intention of the parties. The letter agreement indicates that the Dances recommended filing a lawsuit against Trustee Comer and the beneficiaries of the trust:

> . . . to construe the meaning of that Trust as well as two deeds. . . . The purpose of the lawsuit is to determine the validity of said Trust and deeds.

Thus, the agreement states explicitly the purpose of the litigation. It then states that the attorney's fees would be "40% of the amount you receive from this litigation. . . ," with a provision for a 50% share if the matter were appealed.

The statement in the agreement of the purpose of the litigation indicates an intention by the parties that the Dances should obtain 40% of the amounts collected only if the purpose of the lawsuit were accomplished, i.e., the trust were declared invalid. This interpretation is supported by the high percentage of the contingent fee, 40% at the trial level and 50% if appealed; such percentages indicate an intent to compensate the attorneys for assuming "a significant degree of risk that [they]

_____

[1]As opposed to 30% in *White*.

6

will not be compensated if the outcome is not successful." *Alexander*, 903 S.W.2d at 696.

In a contract between an attorney and a client, ambiguities are construed against the attorney who drew the contract; in this case against the Dances. *Id.* at 694. As noted above, adoption of the interpretation asserted by the Dances would likely result in an excessive fee; this Court will adopt the construction that is reasonable and fair. *Covington*, 723 S.W.2d at 645. Under all of these circumstances, we find that the evidence preponderates in favor of the trial court's implicit finding that the parties to the agreement intended the attorney's fee to be contingent upon obtaining a declaration by the court that the trust at issue was invalid. Consequently, we affirm the trial court's denial of the Dances' claim for attorney's fees.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellants Richard Dance and Fred C. Dance, for which execution may issue if necessary.



_____
**HOLLY KIRBY LILLARD, J.**

_____
**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**