# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

JOANN WHITE MOONEY,
Individually and as Guardian and
Next Friend of ALEXANDER
FINDLAY MARTIN MOONEY,
A Minor,

    Plaintiffs/Appellants,

v.

JOE SNEED, A. ATKINSON,
JOHN DOE and THE CITY OF
MEMPHIS,

    Defendants/Appellees.

**FILED**

**March 31, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

Shelby Law No. 62305

Appeal No. 02A01-9709-CV-00210

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE D'ARMY BAILEY, JUDGE

For the Plaintiffs/Appellants:

Gary K. Smith
Darrell E. Baker, Jr.
Estelle C. Gaerig
Memphis, Tennessee

For the Defendants/Appellees:

David A. King
E. Todd Presnell
Nashville, Tennessee

Buckner Wellford
Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a suit against two emergency medical service technician-paramedics for alleged negligent performance of emergency services. The plaintiff asserts that an improperly placed endotracheal tube caused oxygen deprivation and aggravated the patient's injuries. The trial court granted summary judgment in favor of the defendant technicians, holding that they are not "health care practitioners" under Tennessee Code Annotated § 29-30-310(b), and thus are immune from suit under the Tennessee Governmental Tort Liability Act (TGTLA). We reverse.

On June 12, 1993, Alexander Mooney, a minor, was injured in a one car accident when the driver, Andrew M. Olney, lost control of the car. The City of Memphis ("City") dispatched two emergency medical technician-paramedics ("EMT-Ps"), Joe Sneed and Glen Atkinson, to the scene. The EMT-Ps found the injured minor unconscious with serious head injuries. The patient was transported to the hospital.

The two defendant EMT-Ps and one non-defendant EMT-P, George Edwards, who was also dispatched to the scene, gave depositions about Alexander's treatment. Joe Sneed stated that, upon arrival at the accident, he and his partner, Glen Atkinson, found Alexander slumped over and bleeding from his head. They immediately immobilized him by placing a C-collar around his neck and strapping him to a back board. After Alexander was immobilized on the board, he aspirated or vomited and then inhaled the vomitus into his lungs. Sneed noted that Alexander had a slow breath rate in an irregular breathing pattern, which would prevent the required amount of oxygen from reaching the lungs. Consequently, Sneed testified that he made the decision to insert an endotracheal tube ("ET tube"), which delivers high amounts of oxygen directly to the lungs. Edwards first attempted to insert the ET tube but was unsuccessful. Atkinson then took over the insertion, stating that during the insertion, he had to constantly suction vomitus out of Alexander's mouth. While Atkinson inserted the tube between the vocal cords, Sneed listened to Alexander's breath sounds, which indicates whether the tube is properly placed in the trachea rather than improperly placed in the esophagus. Sneed reported that Alexander's breath sounds were "diminished" and that his lungs were filled with liquid. During transport to the hospital, the tube had to be suctioned several times due to the prior aspiration.

Both Sneed and Atkinson testified that if the ET tube is incorrectly placed in the esophagus, the abdomen "blows up like a balloon" due to oxygen flowing into the stomach. Sneed stated that

Alexander's stomach never inflated as it would have if the ET tube was improperly placed. At no time did Alexander turn cyanotic or blue-gray around the lips from lack of oxygen.

Subsequently, Jo Ann White Mooney ("Mooney") filed this lawsuit individually and as Alexander's guardian and next friend. In the lawsuit, Mooney alleged that the EMT-Ps negligently placed the tube in the minor's esophagus rather than his trachea, causing oxygen deprivation during transport to the hospital and aggravation of Alexander's condition. The suit was filed against the City, the two EMT-Ps, and a John Doe who was responsible for the training of EMT personnel.

A summary judgment motion was filed on behalf of the defendant-EMT-Ps. In their motion, the EMT-Ps argued that they are not "health care practitioners" under Tennessee Code Annotated § 29-30-310(b) and are therefore immune from suit under the TGTLA.

In their depositions, the EMT-Ps both testified that they are paramedics or EMT-Ps. Sneed stated that his job duties are to give medical treatment to the patient from the time the paramedics arrive at the scene until the patient is delivered to the hospital. Sneed testified that he attended Shelby State Community College for two years to obtain training as a paramedic. Atkinson also attended a two-year program for his paramedic training at Delta Vo-Tech in Jonesboro, Arkansas. Sneed explained that a paramedic is certified upon completion of the course work. Both Sneed and George Edwards testified that, every two years, paramedics must be recertified, which requires the completion of a specified number of class hours and an exam. The classes cover subjects such as closed-head trauma, respiration, and heart problems. Sneed testified that the paramedics can call a physician while they are at the scene or on route to the hospital to get information on emergency medical services. In this case, however, the paramedics did not contact a physician before or during the intubation process.

The trial court dismissed the John Doe defendant. In addition, the trial court granted summary judgment for the defendant EMT-Ps, finding that emergency medical technicians are not "health care practitioners" under the TGTLA, and thus are immune from suit. Mooney now appeals the trial court's dismissal of the EMT-Ps. The sole issue on appeal is whether the EMT-Ps are "health care practitioners" under the TGTLA, Tennessee Code Annotated § 29-20-310(b).

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of

2

demonstrating that no genuine issue of material fact exists. ***See Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id.*** at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***See Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***See id.*** Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. ***See id.***

Under the Tennessee Governmental Tort Liability Act, most government employees are immune from liability.[1] There is an exception for "health care practitioner[s]" against whom a medical malpractice action is filed in which the amount of damages sought or judgment entered exceeds the TGTLA's minimum limits set out in section 29-20-403.[2] The TGTLA does not define the term "health care practitioner." In the instant case, therefore, we must determine whether the EMT-Ps would be considered "health care practitioners" under the TGTLA.

---

[1] The pertinent provisions of the TGTLA are found in Tennessee Code Annotated § 29-20-310(b) and (c):

> (b) No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for medical malpractice brought against a health care practitioner. No claim for medical malpractice may be brought against a health care practitioner or judgment entered against a health care practitioner for damages for which the governmental entity is liable under this chapter, unless the amount of damages sought or judgment entered exceeds the minimum limits set out in § 29-20-403 or the amount of insurance coverage actually carried by the governmental entity, whichever is greater, and the governmental entity is also made a party defendant to the action.
> (c) No claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment for which the governmental entity is immune in any amount in excess of the amounts established for governmental entities in § 29-20-403, unless the act or omission was willful, malicious, criminal, or performed for personal financial gain, or unless the act or omission was one of medical malpractice committed by a health care practitioner and the claim is brought against such health care practitioner.

Tenn. Code Ann. § 29-20-310(b) (Supp. 1998).

[2] Section 29-20-403(b)(2)(A) sets forth the minimum limits as "not less than one hundred thirty thousand dollars ($130,000) for bodily injury or death of any one (1) person in any one (1) accident, occurrence or act." Tenn. Code Ann. § 29-20-403(b)(2)(A) (Supp. 1998).

3

The EMT-Ps attempt to rely on ***Willis v. Kirk***, No. 01A01-9312-CV-00537, 1994 WL 265835 (Tenn. App. June 17, 1994), *app. denied, concurring in results only*, (Tenn. Oct. 31, 1994), to support the argument that they are not "health care practitioners." In *Willis* the Tennessee Court of Appeals dismissed the plaintiff's negligence claim against an ambulance service employee based on the lack of evidence that the attendant was negligent or violated any applicable standard of care. In dicta, however, the *Willis* court stated that the record contained insufficient evidence of "the work of an ambulance attendant" to conclude that the attendant was a "health care practitioner" under the TGTLA. We note, however, that the Tennessee Supreme concurred in the results only in *Willis*, and therefore we are not bound by its reasoning. *See* Rule 4.4, Rules of Tenn. Sup. Ct. (stating that a concurrence in results only prohibits publication of the intermediate appellate court decision); *see also Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 307 (Tenn. 1998).

We must consider a case recently decided by this Court and unavailable to the trial court when it rendered its decision, ***Todd v. Weakley County***, No. 02A01-9708-CV-00197, 1998 WL 395172 (Tenn. App. Jul. 16, 1998), for the definition of the term "health care practitioner." At issue in *Todd* was the immunity of two nurses and two nurses aides who worked for a county nursing home. The defendants argued that they were protected by the TGTLA's immunity provisions because they were not "health care practitioners." *See id.* at *1. Since the term is undefined under the TGTLA, the appellate court considered in depth the meaning of "health care practitioner" in the context of the statute. *See id.* at *4. After consulting dictionaries and reviewing Title 63 of the Tennessee Code Annotated dealing with the healing arts, the court concluded that

> the term "health care practitioner" means one who is engaged in the exercise or employment of a health care vocation or occupation which requires advanced or specialized education, knowledge, and skill, and which requires licensure or certification under the provisions of Title 63. This definition includes, but is not limited to, physicians, physician assistants, pharmacists, psychologists, physical therapists, and registered nurses.

*Id.* Thus, after considering the ordinary meaning of the term "health care practitioner" and the Legislature's use of the term in the Tennessee Code, the *Todd* court interpreted the term somewhat broadly, with appropriate parameters.

The *Todd* Court then applied the definition of "health care practitioner" to the facts in that case. Considering the defendant licensed practical nurse (LPN), the Court noted that the defendant

4

LPN attended nursing school, completed a practical experience requirement and passed a written examination to become an LPN. *See id.* at *5. The Court also considered the defendant licensed nursing home operator, who was required to work for a period of time with another licensed nursing home operator, took a correspondence course through a recognized university and passed a written examination. *See id.* Based on these facts, the Court concluded that these two defendants would be considered "health care practitioners" within the meaning of the TGTLA.

In contrast, the *Todd* Court found that two defendant nurse's aides would not be deemed health care practitioners. *See id.* The aides were unlicensed personnel who performed unspecialized services such as making beds and giving baths. *See id.* Their function was to "assist" licensed personnel in patient care. *See id.*

In *Todd*, the Court considered in depth the meaning of the term "health care practitioner" but did not specifically consider EMTs. In this case, the definition of "health care practitioner" adopted in *Todd* is controlling and must be applied to the evidence in the record.

EMTs are licensed under the Emergency Medical Services Act of 1983, Tennessee Code Annotated §§ 68-140-501 to 68-140-518. EMT is defined as a person "licensed to practice emergency medical care." *See* Tenn. Code Ann. § 68-140-502(12) (Supp. 1998). An EMT-P is defined as "an individual licensed to practice advanced emergency medical care." *See* Tenn. Code Ann. § 68-140-502(13) (Supp. 1998). "Emergency medical services" is defined as providing "immediate medical care in order to prevent loss of life or aggravation of illness or injury." *See* Tenn. Code Ann. § 68-140-502(11) (Supp. 1998). The Act provides that a patient transported by ambulance must be accompanied by "an EMT, physician or nurse." *See* Tenn. Code Ann. § 68-140-509(a) (Supp. 1998). The EMTs are licensed under Title 68. *See* Tenn. Code Ann. § 68-140-508 (1996).

Extensive information concerning the certification requirements for EMTs and EMT-Ps is found in the Tennessee Rules and Regulations. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04 & 1200-12-1-.13. EMTs must successfully complete an approved basic EMT course along with written and practical examinations within one year of completion of training. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(1) (revised 1994). EMT-Ps must meet all the requirements for an EMT and, in addition, must complete an EMT-P course along with written and practical examinations. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(2) (revised 1996). For certification purposes, therefore, an EMT-P

5

is defined as:

> A person who has successfully completed an accredited program in Tennessee for emergency medical technician-paramedics . . . and received endorsement from the training institution; who has completed written and practical qualifying examinations; and certified to practice advanced emergency medical care upon the order or under the supervision of a physician or authorized nurse.

Tenn. Comp. R. & Regs. 1200-12-1-.04(4)(b) (revised 1990). EMTs can perform extended skills or procedures after training when such treatment is conducted under authorized medical control or under the instruction and advice of a physician. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(3)(a)(i) (revised 1996).[3] The areas and skills in which EMTs may receive training involve the treatment of anaphylaxis with epinephrine, respiratory distress with bronchodilators, chest pain with aspirin, cardiac conditions with nitroglycerine, airway retention procedures, intravenous fluid therapy, and defibrillation with an automatic mode device. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(3)(2) (revised 1996). EMT-Ps can also perform electrocardiographic monitoring, recognize and treat cardiac dysrhythmias, perform gastric, esophageal, or tracheal intubation and suction, administer blood products, perform chest decompression, perform cricothryotomy, and administer several classes of drugs. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(3)(3) (revised 1994).

For recertification, EMTs must complete two continuing education units or two college credit hours in EMT studies or successfully complete a patient care-oriented certification renewal examination with a minimum score of 80%. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(6)(a) (revised 1994). EMT-Ps must complete three continuing education units or three college credit hours or complete a certification renewal examination with a minimum score of 80%. *See* Tenn. Comp. R. & Regs. 1200-12-1-.04(6)(b) (revised 1994).

In this case, the EMT-Ps were clearly providing specialized medical care requiring knowledge and skill, namely, the insertion of an endotracheal tube into the patient. To become EMT-Ps, Sneed and Atkinson completed written and practical examinations, as well as classes at

---

[3] The definition of "medical control" is:

[T]he instruction and advice provided by a physician, and the orders by a physician or nurse authorized under written agreement which define the treatment of a patient; where direct communication, written protocols, or standing orders are provided; and that such procedures are in accordance with locally or regionally approved medical practices.

Tenn. Comp. R. & Regs. 1200-12-1-.04(3)(a)(1)(i) (revised 1996).

6

vocational schools. Under all of these circumstances, and under the definition set forth in *Todd*, EMT-Ps must be considered "health care practitioners" within the meaning of the TGTLA.

Because EMT-Ps are "health care practitioners," they are not protected by the immunity provisions of the TGTLA where the amount of damages sought or the judgment entered exceeds the minimum limits of the TGTLA. There remains a genuine issue of material fact as to whether the EMT-Ps breached their standard of care. Consequently, the grant of summary judgment in favor of the EMT-Ps must be reversed.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to Appellees, for which execution may issue if necessary.


_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**DAVID R. FARMER, J.**

7