# IN THE COURT OF APPEALS WESTERN DIVISION OF TENNESSEE

## AT JACKSON

**FILED**

**April 30, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JERRY CUNNINGHAM,

    Plaintiff-Appellant,

v.

BAKER DONELSON, BEARMAN,
& CALDWELL, P.C.,

    Defendant-Appellee.

) C/A NO. 02A01-9712-CV-00299
)
) SHELBY CIRCUIT
)
) HON. DICK W. JERMAN, JR.,
) JUDGE - BY INTERCHANGE
)
) AFFIRMED
) AND
) REMANDED

JERRY CUNNINGHAM, *pro se.*

ARNOLD GOLDIN, Memphis, for Defendant-Appellee.

## O P I N I O N

Franks, J.

This legal malpractice action was filed on January 29, 1997, and the Trial Court, responding to a motion to dismiss, dismissed the action as being barred by the statute of limitations. Plaintiff has appealed.

The gravamen of plaintiff's complaint is as follows:

On or about September 24, 1991, Plaintiff obtained the services of the Defendant to represent himself and his closely held corporation in the Chancery Court lawsuit of M & M Instant Package Delivery versus Southland Courier Corporation, VIP Express, Inc. And Jerry Cunningham. When first presented with the case Plaintiff was already

the subject of an injunction which prohibited the sale or transfer of his business and upon which the bond or surety posted by Plaintiff was $500.00. The injunction was improper as Plaintiff in that suit had no property interest in the Defendant's business and ultimately, in the litigation, Defendant received back this $500.00 as sanction against the Plaintiff. Defendant's counsel, Michael Richards, failed to object to the injunction, the bond for the injunction, and to adequately advise and apprise your plaintiff herein.

The record establishes that the attorney of the defendant firm representing plaintiff met with plaintiff on September 25, 1991, regarding the lawsuit which had been filed against plaintiff on September 23, 1991. The plaintiff in that case had obtained a temporary restraining order prohibiting Cunningham from transferring any contract rights that he had as a result of his purchase of the plaintiff's assets in 1990. Negotiations with that plaintiff's attorney ensued, and an agreement was reached whereby plaintiff would non-suit defendant VIP from that action and the application for a preliminary injunction would not go forward. The restraining order expired by its terms on October 7, 1991.

Cunningham filed an affidavit in response to the motion to dismiss wherein he states in pertinent part:

> 2. On September 23, 1991 SCC was served with a TRO issued in Chancery Court, Division II, which temporarily restrained the conveyance of certain assets to VIP Express, Inc., which was also restrained by the court. These assets included those which were acquired in August 1990 through a contractual acquisition whereby SCC purchased them from M&M Instant Delivery Company.
>
> 3. As procedures for merging SCC and VIP Express had already begun and the SCC drivers and other employees had been previously notified in a staff meeting attended by VIP officers that Friday, September 28, 1991 would be the company's final day of business prior to a merger of all operations, this TRO - even though it was prescribed to expire on October 7 - presented a serious and potentially damaging problem to both companies. SCC was potentially affected by the TRO to a much greater degree than VIP Express.
>
> 4. Immediate notice of the TRO service was made to Mr. Richards. He conferred with counsel for VIP Express and M & M Delivery and together they set up a meeting of all parties to take place on September 26, 1991.

2

5. This meeting was largely moderated by Mr. Richards. He devoted most of the time to citing the various ways in which the TRO was illegally obtained and further claimed that counsel for M&M Delivery had violated professional ethics as defined in Rule 11. Counsel for VIP Express concurred completely and later filed a brief in Chancery Court which affirms this position. Counsel for M&M Delivery was not persuaded by these arguments.

. . .

7. Mr. Richards left the city on 9/26/91 and I did not communicate with him until his return the following week after which I had already abided by the terms set forth in the TRO and had also followed the instructions of William Fones, in whose care I was placed, to turn over all assets of M&M prior to the close of business on 9/28/91. I followed all of these orders.

8. No efforts were made by Baker-Donelson other than those stated above to terminate the TRO or to mitigate potential damages by asking the court for an increase in the $500 posted bond.

9. The TRO did not allow me to perform as called for in the agreement between SCC and VIP Express. There were other compounding and exponentially damaging problems which were also set into motion as a result of the TRO. A re-negotiated settlement was finally agreed to and executed some three months later. All the corporation's cash flow and the money which was to have been paid in September, October and November as per the original agreement was totally cut off. Serious financial problems arose as a result.

10. Baker-Donelson filed a counter-suit against M&M Delivery in December of '91 citing the illegality of the TRO.

Defendant law firm withdrew from representing plaintiff herein, when plaintiff filed a Chapter 7 bankruptcy in February 1992, and plaintiff then hired other counsel to represent him in the action brought by M&M Delivery.

The plaintiff concludes his affidavit by stating that he was not aware that defendant "might be culpable of legal malpractice until a meeting in the office of the Chief Disciplinary Counsel for the Board of Responsibility on February 4, 1996", and he contends that the statute of limitations began to run in this case on that date.

In reviewing the grant of summary judgment, we review the evidence in the light most favorable to plaintiff, drawing all reasonable inferences in his favor and disregard all countervailing evidence. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.

3

1993). If there is a disputed issue of material fact we are required to vacate the summary judgment and remand for trial. Rule 56, T.R.C.P.

The statute of limitations in this case has run on plaintiff's action unless the "discovery rule" is applicable. The discovery rule is described in *Carvell v. Bottoms*, 900 S.W.2d 23 at 28 (Tenn. 1995), where the Court said:

> [t]he "legal malpractice discovery rule" is composed of two distinct elements:
> (1) the plaintiff must suffer, pursuant to the *Ameraccount* dicta, an "irremediable injury"[1] as a result of the defendant's negligence, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence.

The record demonstrates that plaintiff was aware of a "legally cognizable injury" or "actual injury" at the time the restraining order was served upon him. Plaintiff's affidavit in the record made on January 25, 1995, detailed the manner in which he was damaged as a result of the restraining order. Plaintiff's other affidavit reveals that he was made aware at the meeting on September 26, 1991 that according to his lawyer the TRO was illegally obtained, and he was apprised of the procedure followed by his counsel in allowing the TRO to expire under the rules of court. He was also aware that only a $500 bond had been made at the time the TRO was issued. Moreover, he knew that his attorney did not ask for an increase in the bond, nor was any formal effort made to lift the temporary restraining order. In sum, the plaintiff was aware that he had been damaged by the issuance of an improper restraining order, and his attorney who advised plaintiff at that time that the TRO was illegally obtained, did not take procedural steps to have the order rescinded, the issuance of the TRO being,

---

[1] *Carvell* elaborated on irreparable injury as follows:

> [w]e can no longer even approve of the usage of the adjective "irremedial" in this context. This term, which was first used in pure dicta by the *Ameraccount* court has caused confusion from its inception, and serves no useful purpose. Therefore, to avoid further confusion, we conclude that henceforth the term "legal cognizable injury" or "actual injury" should be used in this context. *Id.* 29-30.

4

according to plaintiff, the cause of his damages.

Accordingly, we conclude that plaintiff actually knew in September 1991, as evidenced by his admissions that he had been injured by a TRO which was illegally obtained and that his lawyer took no steps to increase the bond or seek to have the order lifted. We therefore affirm the judgment of the Trial Court because there are no material facts in the record to bring this action within the "legal malpractice discovery rule." *See Carvell.*

The costs of the appeal are assessed to appellant.

\_\_\_\_

_____
Herschel P. Franks, J.

CONCUR:

_____
Don T. McMurray, J.

_____
Charles D. Susano, Jr., J.

5