# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

December 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

LARRY C. GRANDERSON,                      )
                                          )
        Plaintiff/Appellant,              )        Shelby Juvenile No. 104448
                                          )
v.                                        )
                                          )        Appeal No. 02A01-9801-JV-00007
LISA STEPHENS HICKS,                      )
                                          )
        Defendant/Appellee.               )


APPEAL FROM THE JUVENILE COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE


THE HONORABLE A. V. McDOWELL, JUDGE


For the Plaintiff/Appellant:              For the Defendant/Appellee:

M. Dell Stiner                            Harold D. Archibald
Memphis, Tennessee                        Memphis, Tennessee


**REVERSED AND REMANDED**


HOLLY KIRBY LILLARD, J.


CONCURS:

ALAN E. HIGHERS, J.


DAVID R. FARMER, J.

**OPINION**

This is a paternity case. The putative father appeals from the trial court's order denying a motion seeking DNA tests to determine the paternity of the minor child, based on alleged fraud in the procurement of a consent acknowledgment of paternity. The trial court dismissed the case prior to a hearing on the motion. The putative father appeals. We reverse and remand for a hearing.

Myisha Nicole Stephens was born out-of-wedlock to appellee Lisa Stephens Hicks ("Hicks") on October 3, 1985. Subsequently, the Tennessee Department of Health Services filed a Petition to Establish Paternity and named appellant Larry Granderson ("Granderson") as the natural father of the child. On February 4, 1986, the parties entered into a voluntary consent order of paternity ("Consent Order"). Subsequent orders were entered, establishing visitation for Granderson and increasing child support. In 1994, an order was entered awarding both parties joint custody of the child.

In 1997, Hicks filed another motion to increase child support. In response, Granderson filed a motion to set aside the paternity and child support order or, in the alternative, for blood tests to determine if Granderson is Myisha's father. Pursuant to Tennessee Code Annotated § 24-7-118(e), Granderson alleged fraud in the procurement of the Consent Order. Granderson claims that he signed the original Consent Order based on Hicks' fraudulent representation to him that he was Myisha's father. He asserts that Hicks later disclosed to a third party that the third party is the child's father. Granderson claims that Hicks introduced Myisha to the third party as being her father and has openly held out to others that the third party is Myisha's father.

On October 3, 1997, the trial court entered an order denying Granderson's motion to set aside paternity and child support or alternatively, that DNA tests be conducted. The trial court did not conduct an evidentiary hearing on Granderson's allegation of fraud in inducing the original consent order.

Five months after the denial of Granderson's motion, and after Granderson's notice of appeal had been filed, the trial court entered an order granting Granderson's request for a blood test. The record does not reflect any further action on this order.

Granderson now appeals the denial of the motion and its dismissal without a hearing. In addition, we must address the trial court's order granting Granderson's request for a blood test, entered after notice of appeal had been filed.

After entry of the trial court's order providing for a blood test, the record does not reflect any

further action. On appeal, we must assume that the blood tests have not been performed. Jurisdiction of the appellate court attaches upon filing of the notice of appeal. *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1981) (citing Tenn. R. App. 3e, 4a). Consequently, after Granderson's notice of appeal was filed, the trial court was without jurisdiction to enter an order granting his request for a blood test. Therefore, this order must be considered void.

On appeal, Granderson contends that the trial court erred in denying his motion without first conducting a hearing. Granderson contends that Tennessee Code Ann. § 24-7-118(e) permits a challenge to a consent order on the basis of fraud in the procurement of the order. In addition, Granderson asserts that the plain language of the statute provides for a hearing based upon allegations of fraud, duress or material mistake of fact in the procurement of a voluntary acknowledgment of paternity. He asserts the trial court was required to conduct an evidentiary hearing on his allegation of fraud in the procurement of the Consent Order.

Hicks responds that Tennessee Code Annotated § 24-7-112(a)(1) required Granderson to contest paternity in the "initial appearance," which occurred when Granderson entered into the Consent Order. She notes that Granderson's request for a blood test occurred some thirteen years after the Consent Order, in response to her attempt to increase child support. Hicks argues there was no "fraud in the procurement" of the Consent Order, and that Granderson agreed to the Consent Order based on his own belief that he was Myisha's father. Since there was no fraud in the procurement of the agreement, Hicks maintains that Granderson is precluded from contesting paternity by the five year statute of limitations set out in the statute.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Tennessee Code Annotated § 24-7-112 addresses the conditions under which a parentage test is ordered. Originally, the statute gave parties the right to a parentage test if requested in the "initial appearance" in the case, and thereafter the trial court had the discretion to determine whether a parentage test should be administered. *See State v. Williams*, 1997 WL 675459m *3 (Tenn. App. 1997). However, effective July 1, 1997, the statute was amended to read as follows:

2

(a)(1)(A) In any contested paternity case, . . . the court, . . . shall order the parties and the child to submit to genetic tests to determine the child's parentage upon the request of any party if the request is supported by an affidavit of the party making the request . . .

* * *

(2) During any other civil or criminal proceeding in which the question of parentage arises, upon the motion of either party or on the court's own motion, the court shall at such time as it deems equitable order all necessary parties to submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage.

Tenn. Code Ann. § 24-7-112(a)(1)(A)-(a)(2) (Supp. 1998). Therefore, under the revised statutes, parentage testing is mandatory in a contested paternity case, upon request of a party. If the issue is raised in another proceeding, subsection (a)(2) gives the trial court discretion to determine whether to permit testing. *See Davis v. Davis*, No. 03A01-9509-CH-00327, 1996 WL 12584, at *1 (Jan. 11, 1996); *Steioff v. Steioff*, 833 S.W.2d 94, 96 (Tenn. App. 1992).

Tennessee Code Annotated §§ 24-7-118 (e)(1) and (e)(2) address a party's right to challenge a voluntary acknowledgment of paternity:

(e)(1) If the voluntary consent acknowledgment has not been rescinded pursuant to subsection (c), the acknowledgment may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact.

(2) The challenger must institute the proceeding upon notice to the other signatory and other necessary parties including the Title IV-D agency within five (5) years of the execution of the acknowledgment, and if the court finds *based upon the evidence presented at the hearing* that there is a substantial likelihood that fraud, duress, or material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests. Such action shall not be barred by the five (5) year statute of limitations where fraud in the procurement of the acknowledgment by the mother in the procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not affect the interest of the child, the state, or any Title IV-D agency. . . .

Tennessee Code Annotated § 24-7-118(e)(1)-(2) (Supp.1998) (emphasis added).

The policy considerations underlying the paternity statutes must be noted. In *Bass v. Norman*, the Court stated that "[T]he purpose of the paternity statute is to require a biological father to support his child." *Bass v. Norman*, 1989 WL 15788 *471 (Tenn. App. 1989) (citing *Frazier v. McFerrin*, 55 Tenn. App. 431, 402 S.W.2d 467 (1964)). The Court held that a mother could bring a petition to establish paternity and support against the alleged father even though she was married to another at the time the child was born. *Id.* *Shell v. Law* again addressed the policy behind the paternity statutes:

Under the authority of *Bass* and T. C. A. 24-7-112, we believe that all common law

3

> presumptions relating to paternity and legitimacy are rebuttable and the public policy has now been established by the General Assembly that true parentage is the end that should be pursued by the courts in paternity actions.

*Shell v. Law*, 935 S.W.2d 402, 408 (Tenn. App. 1996). The interest in determining true parentage must, of course, be weighed against the need for stability for the child, particularly in situations in which the child has long believed that the party requesting the blood test was his father.

In this case, Granderson had a right to a blood parentage test pursuant to subsection (a)(1)(A) only if requested in the contested paternity case. Code Ann. § 24-7-112 (a)(1)(A). Subsequently, his motion to set aside paternity and child support and his request for a blood test may be considered pursuant to subsection (a)(2) of Tennessee Code Annotated § 24-7-112. This section grants the trial court the discretion to determine whether to grant a request for a blood test in proceedings other than a contested paternity case. *See State v. Williams*, 1997 WL 675459m *3 (Tenn. App. 1997).

However, Tennessee Code Annotated § 24-7-112 must be construed along with Tennessee Code Annotated § §24-7-118(e)(1) and (e)(2). *Stevens v. Linton*, 190 Tenn. 351, 354, 229 S.W.2d 510, 512 (1950) ("The rule of interpretation, in pari materia, is that if divers statutes relate to the same thing, they are all to be taken into consideration in construing any one of them."). Sections 24-7-118(e)(1) and (e)(2) address a challenge to a voluntary acknowledgment of paternity based on fraud in the procurement, as alleged in this case. Section 24-7-118(e)(2) states that fraud may be a basis for challenging such a voluntary consent acknowledgment, if "based on the evidence presented at the hearing" the court finds a substantial likelihood that fraud "existed in the execution of the acknowledgment of paternity. . . ." Tenn. Code Ann. § 24-7-118(e)(1) (Supp. 1998). Under these circumstances, the statute provides that the trial court "shall" order parentage tests. *Id.* Moreover, the five-year statute of limitations is not a bar in cases of fraud in the procurement "where the requested relief will not affect the interest of the child, the state, or any Title IV-D agency." *Id.*

Applying these statutes to the facts in this case, Tennessee Code Annotated § 24-7-118(e)(2) requires the trial court to conduct a hearing in cases in which the putative father alleges fraud in the procurement of the voluntary acknowledgment of paternity. After the hearing, if the trial court finds "a substantial likelihood" of fraud "in the execution of the acknowledgment of paternity," it must order parentage tests, even if the relief is requested after the five-year statute of limitations has lapsed, provided the trial court also finds that this relief "will not affect the interest of the child, the state, or any Title IV-D agency." *Id.*

4

Therefore, in the case at bar, the trial court erred in denying Granderson's motion without an evidentiary hearing on his allegation of fraud in the procurement of the Consent Order. Consequently, the decision of the trial court is reversed. The cause must be remanded to the trial court for an evidentiary hearing on Granderson's allegations.

The decision of the trial court is reversed and remanded as set forth above. Costs on appeal are taxed to the Appellee, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**