IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief November 19, 2002

## RONALD CRAFTON v. JOHN VAN den BOSCH, JR.

**A Direct Appeal from the Circuit Court for Madison County**
**No. C-00-241     The Honorable Donald H. Allen, Judge**

_____

**No. W2002-00679-COA-R9-CV - Filed February 10, 2003**

_____

The appellant, an attorney, was sued by his client for legal malpractice for failure to file a motion for post-conviction relief in a criminal matter. Appellant's Motion for Summary Judgment was denied and he appeals. We affirm.

**Tenn. R. App. P. 9; Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Gregory D. Smith, Clarksville, For Appellant, John Van den Bosch, Jr.

No Brief Filed By Appellee

### OPINION

Ronald Crafton ("Mr. Crafton," "Plaintiff," or "Appellee") was convicted of raping Crystal Greer and Dionne Crafton. The conviction was entered on November 25, 1991 and became final on or about February 16, 1992. Although Mr. Crafton fled for approximately four years, he eventually filed a *pro se* petition for post-conviction relief on November 20, 1996. The petition was denied based in part on the expiration of the one-year statute of limitations. Mr. Crafton then filed a *pro se* petition for state habeas corpus relief, which was also denied.

On July 13, 2000, Mr. Crafton filed a Complaint for Legal Malpractice (the "Complaint") against John Van den Bosch ("Mr. Van den Bosch," "Defendant," or "Appellant"). This sworn Complaint reads, in pertinent part, as follows:

> In 1994, Mr. Van den Bosch, the defendant was hired by Ron
> Crafton, through the Reverend Stephen Walker, who delivered a
> check wrote [sic] by Ron's mother, Rebecca Meredith, for $3,000

dollars.[1] Mr. Van den Bosch, the defendant, was hired to prepare and draft a post-conviction motion for the plaintiff. The plaintiff provided Mr. Van den Bosch, the defendant, with a recanted statement given by the victim...this [statement] was to be used as evidence, attached to the postconviction, that the defendant was supposed to file. Additional statements, and affidavits were to be made available to the defendant from various people who was [sic] with the plaintiff at the original time the alleged offense was to have occurred, yet the defendant stated he never [k]new of these people even though they called his office and left messages, the defendant stated he never received them, even though the plaintiff's mother personally took the names and addresses of these people to the defendant's office...

\*                              \*                              \*

2. The defendant in this cause received $3,000.00 dollars for his services, and in July or August of 1999, he stated that he could no longer work on the case, and he would talk to another lawyer about the plaintiff's case. And maybe that lawyer could help. Mr. Van den Bosch did nothing but get some transcripts that were incomplete, according to his bill he ordered them twice.[2]

3. The defendant had in his possession evidence that would have established the plaintiff's actual innocence. But the defendant did nothing with this evidence. (A recanted statement from the victim).

4. The plaintiff had hired the defendant to prepare and draft to the Court a motion for post-conviction relief, with the attached evidence, which included a statement of recantation from the victim. An additional recant statement was taken from the victim by the defendant in 1995, and he did nothing with this statement.

\*                              \*                              \*

---

[1] Attached, as Exhibit A, to the Complaint is a copy of a receipt from John Van den Bosch, Jr., stating that $3,000 was received from Becky Merideth [sic] on August 8, 1994. This is receipt No. 18914.

[2] Exhibit B to the Complaint is a statement from the Law Office of John Van den Bosch to Ronald Crafton c/o Rebecca Meredith. The statement reflects the payment of $3,000, described as a "Retainer." Additionally, the statement reflects two charges for "Court Reporter," one in the amount of $400 and another for $100. There are three charges for "Copy fee" in the amounts of $97.50, $97.50 and $27.00. Charges for "Postage" are listed as $4.10 and $3.84. The total amount due is $729.94.

6. The defendant in this cause did in fact advise Reverend Stephen Walker that he should have not [sic] taken the case because he (the Defendant) was too busy with bankruptcy cases.

7. The defendant was contacted in regards to his billing, claiming that the plaintiff owed an additional $729.94, in which the defendant was upset and advised the plaintiff he would charge him with extortion, then the defendant on June 8, 2000, contacted the plaintiff's mother and advised her that the amount that she had been billed for was a mistake, and it would be absorbed by him (the defendant).[3]

On August 10, 2000, Mr. Van den Bosch filed a Motion to Dismiss, claiming that the Mr. Crafton's Complaint was barred by the statute of limitations outlined in T.C.A. § 28-3-104(2), to wit the injuries alleged by Mr. Crafton did not accrue within one year before commencement of the action. The matter was set for hearing on October 16, 2000. On October 5, 2000, Mr. Crafton filed Plaintiff's Motion for Summary Judgment in Response to Defendant's Motion to Dismiss (the "Motion for Summary Judgment"). The Motion for Summary Judgment alleged that:

(A) The plaintiff did assert in his complaint that he had hired Mr. John Van Den Bosch in 1994, but that is not the date in which the plaintiff became aware that the defendant had never submitted a motion for post-conviction or an extension of time to file one, as the defendant had constantly led the plaintiff into believing that he (the defendant) was in the process of getting him back in Court for an evidentiary hearing.

(B) The plaintiff became aware that the defendant was fraudulently concealing information from him in regards to the filing of any motions to the Court, when the defendant advised the plaintiff in late July of 1999 that the defendant would talk with another lawyer to see if he could be of any assistance to the plaintiff.

(C) A week later, around July 27, 1999, the plaintiff hired another attorney, Mr. Mike Mosier, on the advice given to him by the defendant.

---

[3] The letter, dated June 8, 2000, reads, in pertinent part, as follows: "The billing of Ronald Crafton was sent to you by mistake due to a new billing clerk, who did not ask me about the bill before she mailed it. This amount has been absorbed by me."

(D) In August of 1999, the plaintiff's new attorney advised him that the defendant, John Van Den Bosch had not filed any motions in the Court, on behalf of Plaintiff.

On October 16, 2000, Mr. Van den Bosch appeared in court. Mr. Crafton was not present for the hearing. Allegedly an order had not been filed to bring Mr. Crafton from the Department of Corrections to the courtroom. Consequently, the trial court refused to hear the Motion to Dismiss on that date. On November 3, 2000, Mr. Van den Bosch filed Defendant's Motion to Dismiss Plaintiff's Motion for Summary Judgment. On November 6, 2000, Mr. Van den Bosch filed a Motion to Recuse due, in part, to the court's refusal to hear the motions set for October 16, 2000 due to Mr. Crafton's failure to appear. These motions were set for hearing on November 9, 2000 and an Order was entered to bring Mr. Crafton to the court.

A hearing on the Motion to Dismiss and the Motion to Recuse was held on November 9, 2000. During the hearing, Mr. Van den Bosch stated that he "was hired only for the purpose of getting the record [of Mr. Crafton's criminal case in Henry County] and to determine whether there was any likelihood of an appeal." Mr. Van den Bosch also introduced into evidence a letter to Mr. Crafton's mother, dated November 14, 1994. This letter reads as follows:

> Dear Becky:
>
> I am writing to advise you that I have looked through and gone over all of the paperwork which has been given to me in the above matter. At this time, I failed to find any errors that would justify any significant appeal. I am in the process of trying to get the closing statements of the attorneys and the actions of the Judge which are not reported in the present transcript. I will forward a copy of same to you as soon as I receive it.

Mr. Van den Bosch asserts that he was not hired by Mr. Crafton to file a post-conviction relief but only to review the paperwork from the trial court in order to determine if an appeal was feasible. Mr. Van den Bosch cites Mr. Crafton's *pro se* filing of a motion for post-conviction relief as support for his assertion. When Mr. Crafton took the stand on his own behalf at this hearing, he testified, in pertinent part, as follows:

> MR. CRAFTON: He [Mr. Van den Bosch] was hired when [my family] talked with him, and by me talking with him, he [Mr. Van den Bosch] said, "I'm going to try to get you out of prison." He said, "Anyway I can get you out, if it's a post-conviction appeal." The day it got down to an evidentiary hearing, sir, as I was–what happened is, in October we called him. I wrote him. I called him. I had my family members call him. Do not–please do not let my post-conviction time run out.

-4-

THE COURT: Okay.

MR. CRAFTON: He [Mr. Van den Bosch] was made aware. We had discussed several times that I was under a sentence that did not follow TCA guidelines. I told him–He said–I said, "It's going to run out, and you've got a certain date." His remark to me is, "Mr. Crafton, I know what I'm doing. I was hired to handle this case. Let me worry about the law and take care of this."

\*                              \*                              \*

In January of '95, on the 1st or 2nd, he took his own recanted statement in this case and done [sic] nothing with it. He told me, says, "I want to try to get you an evidentiary hearing." All this time that I've talked with him, he never once come [sic] to me and said, "Well, Mr. Crafton, I'm through with your case." He never sent me a written notice. I never seen [sic] any of this.

\*                              \*                              \*

Far as I know, he [Mr. Van den Bosch] didn't look into anything.... As the time still carried on, [Mr. Van den Bosch would say] "I'm still looking, Mr. Crafton. I haven't found anything." All this time I assumed he either filed a petition or had filed some kind of post-conviction to take and keep this case where it could be reopened. You cannot get an evidentiary hearing, to my knowledge, from what I've been told, if the post never has been filed.

\*                              \*                              \*

THE COURT: When did you [Mr. Crafton] find out that Mr. Van den Bosch had not filed anything on your behalf?

MR. CRAFTON: ...In 1999, I went up for parole. I called Mr. Van den Bosch several times. I called him and asked him, I said, "Can you come up here?" I've never met this man. I've never seen this man before in six years.... Well, all this time for about three or four months, Mr. Van den Bosch would say, "Well, I got this attorney I'm going to talk to. There's someone in mind I want to see if they'll take your case. I believe he can help you." Well, I didn't know who he was talking about. I never got a name.

\*                              \*                              \*

> THE COURT: When did you find out–I'm trying to go back to my question. When did you find out Mr. Van den Bosch had not filed anything on your behalf?
>
> MR. CRAFTON: When Mr. Mosier told me that he hadn't filed anything the week before the–August 16[th] was my parole hearing date. He come about a week before that–

On November 13, 2000, Mr. Van den Bosch filed Defendant's Answer to Plaintiff's Complaint for Legal Malpractice. On November 14, 2000, the trial court entered an Order Denying Motion to Dismiss and an Order Denying Motion to Recuse. On November 29, 2000, Mr. Van den Bosch filed Defendant's Response to Plaintiff's Motion for Summary Judgment in Response to Defendant's Motion to Dismiss, along with his own Affidavit in support of that Motion. The Affidavit reads, in pertinent part, as follows:

> In the summer of 1994 I [Mr. Van den Bosch] was hired by Ronald Crafton's mother, Rebecca Meredith, to obtain the trial transcript in the case of State of Tennessee vs. Ronald Crafton in Henry County, Tennessee, to determine if there was a viable course of appeal in Ronald Crafton's criminal case.
>
> After lengthy endeavors to obtain all the trial records affiant finally obtained the trial transcript and went over the same, affiant found no significant error in the trial, despite many and continued assertions by Mr. Crafton with changing scenarios.
>
> I notified Mr. Crafton in the early months of 1995, as well as notifying his mother, that I found no significant errors in the trial and declined to file a Motion for any Post Conviction Relief.
>
> Thereupon Crafton undertook to draft and file his own Motion for Post Conviction Relief.... Affiant further informed Mr. Crafton and his mother if such Motion was filed it would be frivolous and a waste of his money inasmuch as affiant would be required to expend a great amount of time on such Motion in addition to what time affiant had already spent...

On December 12, 2000, Mr. Van den Bosch filed a Motion to Set Aside Order Denying Motion to Dismiss Entered on November 14, 2000. The matter was continued and Mr. Van den Bosch filed Defendant's Motion for Summary Judgment on April 17, 2001, along with Memorandum in Support of that Motion. On May 1, 2001, Mr. Van den Bosch filed a Motion to Quash all Affidavits filed by Mr. Crafton in support of his case because said Affidavits were "not based upon the personal knowledge of the affiant." On the same day, Mr. Van den Bosch also filed

a Motion to Quash all Pleadings Not in Compliance with Tennessee Rules of Civil Procedure. On May 4, 2001, Mr. Crafton filed a Motion to Dismiss the Defendant's Statement of Material Facts Based on the Principle of Res Judicata.

All outstanding motions were heard by the trial court on January 3, 2002. An Order was filed on February 1, 2002, which reads, in pertinent part, as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Summary Judgment in Response to Defendant's Motion to Dismiss is denied; Defendant's Motion to Dismiss Plaintiff's Motion for Summary Judgment is denied; Motion to Set Aside Order Denying Motion to Dismiss is denied; Defendant's Motion for Summary Judgment is denied; Motion to Quash All Pleadings not in Compliance with Tennessee Rules of Civil Procedure is denied; Motion to Quash Affidavits is denied; Motion to Dismiss Defendant's Statement of Material Facts is denied and Plaintiff's Motion to Amend Additional Evidence in Support of Motion for Summary Judgment is granted.

Following the Order, Mr. Van den Bosch filed an Application for Permission to Appeal pursuant to Tenn. R. App. P. 9 on February 21, 2002. The Interlocutory Appeal was granted by Order dated March 12, 2002. This Court granted Mr. Van den Bosch's application by Order dated April 29, 2002, thereby staying all proceedings in the lower court pending the outcome of this present appeal.

Mr. Van den Bosch appeals the February 1, 2002 Order of the trial court, denying his Motion for Summary Judgment. He raises one issue for our review, as stated in his brief: The trial court erred in denying Defendant/Appellant's Tenn. R. Civ. P. 56 motion. Mr. Crafton has filed no brief in answer to Mr. Van den Bosch's appeal. Our ruling will, therefore, be based upon the record as a whole.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summery judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the nonmoving party that there is no genuine issue of material fact, the nonmoving party must them demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that

the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's denial of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

A cause of action for legal malpractice accrues when: 1) the defendant's negligence causes the plaintiff to suffer a legally cognizable or actual injury; and 2) the plaintiff knows "or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Carvell v. Bottoms*, 900 S.W.2d, 23, 28 (Tenn. 1995). In the instant case, Mr. Van den Bosch asserts that his "actions or inactions did not, would not and could not change the eventual outcome of Mr. Crafton's case," because there were no legitimate post-conviction or appellate issues to present. Although Mr. Van den Bosch presents his own affidavit and that of another attorney to support this point, the question of whether Mr. Crafton's motion for post-conviction relief would have failed had it been filed by a knowledgeable attorney rather than *pro se* is a matter of some conjecture and, as such, does not warrant summary judgment.

In addition to finding that there is a dispute of fact as to whether Mr. Van den Bosch's actions or inaction would or did cause Mr. Crafton harm, we also find that the record contains a dispute of material fact as to the exact nature of the attorney/client relationship in this case. Mr. Van den Bosch claims that he was only hired to review the Henry County records for possible grounds for appeal, which he did as evidenced by the letter to Ms. Meredith of November 14, 1994. However, the evidence put into the record by Mr. Crafton, including a retainer fee for $3,000.00, indicates a broader relationship than just a review of the criminal court records. Mr. Crafton indicates that Mr. Van den Bosch's duties included not only filing a motion for post-conviction relief but also securing an evidentiary hearing and doing whatever was necessary to "try to get [Mr. Crafton] out of prison." This dispute of fact is sufficient to warrant denial of a summary judgment in this matter. In short, without knowing the full extent of the relationship and the parameters of Mr. Van den Bosch's employment, we cannot conclude, even if we give all favorable inferences to Mr. Van den Bosch, that Mr. Crafton was not harmed by some action or inaction of his attorney.

For the foregoing reasons, we affirm the Order of the trial court and remand the case for such further proceedings as may be necessary. Costs of the appeal are assessed to the Appellant, Mr. John Van den Bosch, Jr., and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.